Currie, C. J.
The issue on this appeal is the constitutionality of the ordinance pursuant to which the $5,000 *617 equalization fee was paid. Defendant asserts that the ordinance is a valid exercise of its police power in controlling subdivision development to assure its burgeoning population adequate parks and schools. Plaintiffs contend that sec. 8.03 of the ordinance levies a tax which is not authorized by the legislature and unconstitutional.
In 1955 the legislature made extensive revisions in ch. 236, Stats., governing the subdividing and platting of land.[1] Sec. 236.45 was revised so as to permit those localities which are feeling strong pressure of rapid urban growth and development, to legislate more intensively in the field of subdivision control than the legislature has provided for the state at large.[2] In order for a municipality to take advantage of sec. 236.45 it is necessary that it have created a planning agency. Defendant was so qualified inasmuch as it had created a village planning commission in 1958. The pertinent parts of sec. 236.45 read as follows:
“Local subdivision regulation. (1) Declaration of legislative intent. The purpose of this section is to promote the public health, safety and general welfare of the community and the regulations authorized to be made are designed to lessen congestion in the streets and highways; to further the orderly layout and use of land; to secure safety from fire, panic and other dangers; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate adequate provision for transportation, water, sewerage, schools, parks, playgrounds, and other public requirements; to facilitate the further resubdivision of larger tracts into smaller parcels of land. The regulations provided for by this section shall be made with reasonable consideration, among other things, of the character of the municipality, town or county with a view of conserving the value of the *618 buildings placed upon land, providing the best possible environment for human habitation, and for encouraging the most appropriate use of land throughout the municipality, town or county.
“(2) Delegation of power, (a) To accomplish the purposes listed in sub. (1), any municipality, town or county which has established a planning agency may adopt ordinances governing the subdivision or other division of land which are more restrictive than the provisions of this chapter. Such ordinances may include provisions regulating divisions of land into parcels larger than 1)4 acres or divisions of land into less than 5 parcels, and may prohibit the division of land in areas where such prohibition will carry out the purposes of this section.. Such ordinances may make applicable to such divisions any of the provisions of this chapter, or may provide other surveying, monumenting, mapping and approving requirements for such division. . . .
“(b) This section and any ordinance adopted pursuant thereto shall be liberally construed in favor of the municipality, town or county and shall not be deemed a limitation or repeal of any requirement or power granted or appearing in this chapter or elsewhere, relating to the subdivision of lands.” (Italics supplied.)
Preliminary to considering the constitutionality of the equalization-fee provisions of the ordinance, we deem it advisable to pass on the requirement that the subdivider, where practicable, be required to dedicate a portion of the subdivision for sites for school, park, and recreational needs of a value of $200 per residential lot. If this provision of the ordinance is unconstitutional, then of course the provision for payment of a cash fee in lieu of dedicating land for school, park, and recreational sites would of necessity also be unconstitutional.
No claim has been asserted in this litigation that the $200 per lot value of land required to be dedicated by the subdivision owner is unreasonable in amount. Nelson, de *619 fendant’s municipal planning expert, testified that the experience of municipal planners throughout the country has shown that for a good environment for human habitation, for each family in the area, there must be a minimum of 3,000 square feet of land devoted to park and school purposes. After some study of average land values in the village, the village planning commission and the village board determined that land valued at $200 would by and large provide the added park and school lands required for each family brought into the village by creation of the subdivision.
The grounds of the attack upon the land-dedication requirement are that it is not authorized by statute and is an unconstitutional taking of private property for public use without just compensation.
Upon careful analysis of sec. 236.45, Stats., we conclude that it does authorize the land-dedication requirement of the instant ordinance. Sub. (1) of this statute declares that the purposes of the statute include facilitating “adequate provision for transportation, water, sewerage, schools, parks, playgrounds and other public requirements.” The common practice of providing for transportation in a subdivision is for municipal platting ordinances to require dedication of land for streets by the subdivider. Likewise the accepted way to provide water and sewerage facilities for a proposed subdivision is to require the subdivider to provide the same as a condition to the municipality approving the proposed plat. In Zastrow v. Brown Deer [3] this court stated :
“The village could require as a condition of its approval of a plat that the subdivider make and install any public improvements reasonably necessary, including a water system, and it could require as a condition for accepting the dedication that the designated facilities previously constructed and provided be without cost to the village, and that such facilities *620 be according to the village’s specifications and under its inspection, including water mains and laterals.” [4]
Similarly it would seem to follow that the way to facilitate provision for schools, parks, and playgrounds to serve the subdivision would be to require the subdivider to dedicate a portion of the subdivision for such purposes. Sec. 236.13 (2) (a) and (b), Stats.,[5] which apply statewide to all municipalities, irrespective of whether they have planning commissions, grants to municipalities the right to require the subdivider to pay for such public improvements as water and sewer mains, and to dedicate land for public streets, as a condition to the municipality approving the proposed subdivision plat. Sec. 236.45 was intended by the legislature to vest additional authority in those municipalities which had created planning commissions to impose further requirements upon the subdivider. In addition to the aforequoted language spelling out legislative purpose in sub. (1) of this statute, the first sentence of sub. (2) (a), of sec. 236.45, makes clear this intent. The third sentence of this subsection reads, “Such ordinances may make applicable to such divisions any of the provisions of this chapter, or may provide other surveying, monumenting, mapping and approving requirements for such division.” Standing alone the statutory words “other . . . approving requirements” would normally be confined to requirements of the same general nature as *621 the antecedent enumerated specific words “surveying, monu-menting, mapping.” We reject such a restrictive interpretation in favor of the broader one which will encompass the objectives stated in sub. (1). We are further motivated in favor of such a broad interpretation by the direction of sub. (2) (b) requiring a liberal construction of sec. 236.45.
Having concluded that sec. 236.45, Stats., does authorize the land-dedication provisions of the instant ordinance, we turn now to the question of whether they constitute an unconstitutional taking of private property for a public purpose. The Illinois supreme court in Pioneer Trust & Savings Bank v. Mt. Prospect [6] laid down this test of the constitutionality of a requirement placed upon a subdivider, as a condition for approval of the subdivision plat:
“If the requirement is within the statutory grant of power to the municipality and if the burden cast upon the subdivider is specifically and uniquely attributable to his activity, then the requirement is permissible; if not, it is forbidden and amounts to a confiscation of private property in contravention of the constitutional prohibitions rather than reasonable regulation under the police power.” [7]
We deem this to be an acceptable statement of the yardstick to be applied, provided the words “specifically and uniquely attributable to his activity” are not so restrictively applied as to cast an unreasonable burden of proof upon the municipality which has enacted the ordinance under attack. In most instances it would be impossible for the municipality to prove that the land required to be dedicated for a park or a school site was to meet a need solely attributable to the anticipated influx of people into the community to occupy this particular subdivision. On the other hand, the municipality might well be able to establish that a group of subdivisions approved *622 over a period of several years had been responsible for bringing into the community a considerable number of people making it necessary that the land dedications required of the subdividers be utilized for school, park, and recreational purposes for the benefit of such influx. In the absence of contravening evidence this would establish a reasonable basis for finding that the need for the acquisition was occasioned by the activity of the subdivider. Possible contravening evidence would be a showing that the municipality prior to the opening up of the subdivisions, acquired sufficient lands for school, park, and recreational purposes to provide for future anticipated needs including such influx, or that the normal growth of the municipality would have made necessary the acquisition irrespective of the influx caused by opening up of subdivisions.
There also may be situations, unlike the instant one, where there is no substantial influx from the outside and the proposed subdivision only fulfils a purely local need within the community. In those situations it may be more difficult to adduce proof sufficient to sustain a land-dedication requirement.
We conclude that a required dedication of land for school, park, or recreational sites as a condition for approval of the subdivision plat should be upheld as a valid exercise of police power if the evidence reasonably establishes that the municipality will be required to provide more land for schools, parks, and playgrounds as a result of approval of the subdivision.
We deem that the evidence in this case does establish such reasonable connection. There is the testimony of planning expert Nelson that for a good environment for human habitation for each family in the area there should be a minimum of 3,000 square feet of land devoted to park and school purposes. Because of its close proximity to Milwaukee, Menomonee Falls has felt the tremendous impact of urban *623 development in recent years. Between July 23, 1959, and March 15, 1963, 41 plats containing 638 lots were approved pursuant to the instant ordinance. There were five dedications of land by the subdividers, four utilized for parks and one for building an addition to a public school. During this period the village also purchased additional park sites. The increase in school population by school years has been as follows:
Increase Year
342 1958-59
512 1959-60
773 1960-61
531 1961-62
685 1962-63
The village population increased from 6,262 in 1950 to 18,276 in 1960, and to an estimated 25,000 in 1964. Part of the increase in population between 1950 and 1960 was due to the entire town of Menomonee Falls being annexed to the village in 1958.
We do not consider the fact that other residents of the village as well as residents of the subdivision may make use of a public site required to be dedicated by subdivider for school, park, or recreational purposes is particularly material to the constitutional issue. This is also true of land required to be dedicated for public-street purposes.
The test of reasonableness is always applicable to any attempt to exercise the police power.[8] The basis for upholding a compulsory land-dedication requirement in a platting ordinance in the nature of the instant ordinance is this: The municipality by approval of a proposed subdivision plat enables the subdivider to profit financially by selling the subdivision lots as home-building sites and thus realizing a greater price than could have been obtained if he had sold *624 his property as unplatted lands. In return for this benefit the municipality may require him to dedicate part of his platted land to meet a demand to which the municipality would not have been put but for the influx of people into the community to occupy the subdivision lots.
For the reasons stated we determine that the provision of the ordinance requiring dedication of land when practicable for school, park, and recreational sites is constitutional as a proper exercise of police power.[9]
We turn now to the issue of the constitutionality of the equalization-fee provision contained in sec. 8.03 of the ordinance whereby the subdivider is required to pay a total of $200 per lot in lieu of dedicating land of that value for school, park, or recreational needs where the village planning commission finds dedication of land for such purposes is not feasible. In respect to this provision, the question which poses the greater difficulty is not whether there is an attempted illegal taking which cannot be justified as a reasonable exercise of the police power, but whether the legislature has authorized such a provision.
The reason why we consider that the exercise-of-police-power aspect of the equalization-fee question, as distinguished from a requirement that land be dedicated for school, park, or recreational purposes, is not troublesome, is because the same reasons which under the facts of this case prompt us to hold that the land-dedication requirement constitutes a reasonable exercise of the police power apply with equal force to the equalization-fee requirement. The evidence reasonably *625 supports the conclusions that: (1) The approval of the instant and other subdivision plats during the four-year period following the enactment of the ordinance has required defendant village and the encompassing school districts to expend large sums for acquisition of park and school lands and construction of additional school facilities; (2) these expenditures were made necessary by the influx of people into these subdivisions; and (3) these expenditures are greater than the amount which has been exacted from the subdividers by way of land-dedication and equalization fees paid in lieu of land dedication. For example, in 1962 a 13-room addition to the Shady Lane School, which is located in the vicinity of plaintiffs’ subdivision, was completed at a cost of $28,000 per room or $364,000. During the four-year period following enactment of the ordinance, the total value of all land dedications made and equalization fees collected amounted to only $127,000.
However, even though the equalization-fee-requirement provision can be sustained as a reasonable exercise of the police power, it is unconstitutional unless authorized by the legislature. The provision possesses sufficient attributes of a tax so that it cannot be grounded upon the home-rule amendment, sec. 3, art. XI of the Wisconsin constitution. While under this amendment, and the implementing statutes, secs. 61.34 and 62.04, Stats., villages and cities have wide powers to tax for the general welfare, they can only resort to the types of taxes that the legislature has authorized them to use.[10]
Is the equalization fee such a concomitant of the land-dedication provision of the ordinance that its authorization can be found in the language of subs. (1) and (2) of sec. 236.45 hereinbefore relied upon to sustain the land- *626 dedication requirement of the ordinance? We conclude that it is.
Where a comparatively small tract of land is subdivided, as in the instant situation, and there is no adjoining land already devoted to school, park, or playground purposes to which a portion of the proposed subdivision might be attached, it usually would be impracticable to require dedication of any land of the subdivision. The two alternatives are either to relieve the subdivider from any obligation whatever in this direction, or to require payment of an equalization fee of the nature of that here imposed. The latter is in keeping with the stated purpose of the statute.
While sec. 8.03 (2) of the ordinance permits use of the proceeds of the equalization fee for capital improvement of schools, parks, and recreation areas in addition to site acquisition, nevertheless the making of these capital improvements is encompassed by the words of sub. (1) of sec. 236.45 which declare that the purposes of the statute include facilitating “adequate provision for . . . schools, parks, playgrounds and other public requirements.”
The equalization fee exacted pursuant to the ordinance is not a property tax. It is not imposed upon the land in the subdivision as such but is imposed on the transaction of obtaining approval of the plat. Thus, if a tax, it partakes of the nature of an excise tax [11] and does not violate the uniformity clause found in sec. 1, art. VIII of the Wisconsin constitution.
While plaintiffs do not openly contend that the equalization fee is in the nature of a special assessment, they employ arguments that tend in that direction. Thus they point to the fact that the ordinance does not require that park and school sites purchased with funds paid in lieu of dedication *627 bear any relationship to the subdivision providing the funds. This argument would be pertinent if the equalization fee’s validity were dependent on justifying it as a special assessment. The argument, however, does have some pertinency on the previously considered issue of unconstitutional taking of private property for a public purpose as opposed to a reasonable exercise of police power.
To conclude, we determine that the imposition of the instant $5,000 equalization fee is not invalid as unconstitutional. In so holding we are cognizant that this result is contra to the conclusions reached by the Illinois and Kansas courts in the well-considered cases of Rosen v. Downers Grove [12] and Coronado Development Co. v. McPherson [13] with respect to the issue of the validity of the attempted exercise of the police power. While we have great respect for these courts, we believe that there is a reasonable basis for upholding the exercise of the police power voiced in the instant ordinance.
By the Court. — Judgment reversed, and cause remanded with directions to dismiss the complaint.

 Ch. 570, Laws of 1955.

 See Interpretive Commentary with respect to sec. 236.45, 27 W. S. A., p. 534.

 (1960), 9 Wis. (2d) 100, 100 N. W. (2d) 359.

 Id. page 108.

 These subsections provide: “(a) As a further condition of approval, the governing body of the town or municipality within which the subdivision lies may require that the subdivider make and install any public improvements reasonably necessary or that he execute a surety bond to insure that he will make those improvements within a reasonable time.
“(b) Any city or village may require as a condition for accepting the dedication of public streets, alleys or other ways, . . . that designated facilities shall have been previously provided without cost to the municipality, . . .”

 (1961), 22 Ill. (2d) 375, 176 N. E. (2d) 799.

 Id. page 380.

 Stierle v. Rohmeyer (1935), 218 Wis. 149, 162, 260 N. W. 647.

 Billings Properties, Inc., v. Yellowstone County (1964), 144 Mont. 25, 394 Pac. (2d) 182; Cutler, Legal and Illegal Methods for Controlling Community Growth on the Urban Fringe, 1961 Wisconsin Law Review, 370, 388, 389; Comment, Subdivision Regulation: Requiring Dedication of Park Land or Payment of Fees as a Condition Precedent to Plat Approval, 1961 Wisconsin Law Review, 310; contra, Pioneer Trust & Savings Bank v. Mt. Prospect (1961), 22 Ill. (2d) 375, 176 N. E. (2d) 799.

 See Plymouth v. Elsner, ante, pp. 102, 106, 107, 135 N. W. (2d) 799, and cases cited.

 Barnes v. West Allis (1957), 275 Wis. 31, 37, 81 N. W. (2d) 75; and cases cited in Plymouth v. Elsner, ante, pp. 102, 105, footnote 1.

 (1960), 19 Ill. (2d) 448, 167 N. E. (2d) 230.

 (1962), 189 Kan. 174, 368 Pac. (2d) SI.