[Civ. No. 59339. Second Dist., Div. Five. Jan. 6, 1981.]

TRENT MEREDITH, INC., Plaintiff and Appellant, v.
CITY OF OXNARD, Defendant and Respondent.

318

COUNSEL

Nordman, Cormany, Hair & Compton, Michael C. O'Brien and Glen M. Reiser for Plaintiff and Appellant.

Ronald A. Zumbrun, John H. Findley and James L. Meyer as Amici Curiae on behalf of Plaintiff and Appellant.

K. D. Lyders, City Attorney, for Defendant and Respondent.

Daniel J. Curtin, Jr., City Attorney (Walnut Creek), as Amicus Curiae on behalf of Defendant and Respondent.

OPINION

TORRES, J.*—Plaintiff, Trent Meredith, Inc., brought this action in the superior court against defendant, City of Oxnard, challenging the constitutionality of ordinance No. 1781 of the City of Oxnard and sought to bar its enforcement through declaratory injunctive relief. The ordinance was enacted pursuant to Government Code section 65970 et seq. and both parties agree that it is in compliance therewith. The Pacific Legal Foundation has filed an amicus curiae brief in support of plaintiff. The City of Walnut Creek has filed an amicus brief in support of defendant with which 49 cities or school districts have joined. (Hereafter we refer jointly to plaintiff and their amicus as plaintiff subdivider and refer to defendant and their amici as defendant city.)

Plaintiff subdivider contended that ordinance No. 1781 violates section 4 of article XIII A of the California Constitution and as such constitutes an illegal tax assessment.

The trial court found the ordinance was enacted pursuant to state law and was a valid exercise of the police power. Summary judgment was granted in favor of defendant city. Plaintiff subdivider appeals.

FACTS

In 1976 the League of California Cities, the County Supervisors Association and the California School Board Association joined forces to develop specific legislation clearly authorizing the imposition of fees, charges, land acquisition, etc., by local government units for ultimate use by the school districts in alleviating the impact of rapid student population growth. This effort was successful with the passage of Senate Bill No. 201 (Gov. Code, § 65970 et seq.) in September of 1977. Senate Bill No. 201 is set forth in its entirety in appendix A to this opinion.

On June 6, 1978, the voters of this state, added article XIII A to the California Constitution. Section 4 of this article reads as follows: "Sec. 4. Cities, counties and special districts, by a two-thirds vote of the qualified electors of such district, may impose special taxes on such dis-

*Assigned by the Chairperson of the Judicial Council.

trict, except ad valorem taxes on real property or a transaction tax or sales tax on the sale of real property within such City, County or special district."

On November 6, 1979, the defendant city enacted ordinance No. 1781[1] pursuant to Government Code section 65970 et seq. The ordinance requires real property developers either to pay fees or dedicate land to local school districts to relieve conditions of overcrowding caused by such development as a precondition to issuance of a building permit. Ordinance No. 1781 is set forth in its entirety in appendix B to this opinion.

ISSUE

Whether the school facilities fees and in lieu dedication requirements imposed pursuant to ordinance No. 1781 of the City of Oxnard are a "special tax" within the meaning of article XIII A, section 4.

DISCUSSION

I.

 The plaintiff subdivider asks this court to hold that ordinance No. 1781 is a "special tax" within the meaning of article XIII A, section 4 and as such requires two-thirds voter approval for imposition.

Government Code section 65970 et seq. were enacted by the California Legislature in 1977 as a means of alleviating overcrowding of local school facilities caused by new residential development. Ordinance No. 1781 was adopted pursuant to the provisions of that enabling legislation (appen. B, § 27-77.2 of the ordinance). It is clear that ordinance No. 1781 was enacted and operates under the authority of Government Code, section 65970 et seq. Therefore, we confine our discussion to the latter code sections.

---

[1]On June 20, 1978, defendant city enacted the original ordinance (No. 1699) under the state enabling statutes (Gov. Code, § 65970 et seq.). The plaintiff subdivider challenged the constitutional and statutory validity of the ordinance. The defendant city enacted a new ordinance (No. 1781) which repealed ordinance No. 1699 and was in compliance with the state enabling statutes. The plaintiff subdivider amended the pleadings to reflect only the constitutional challenge.

Government Code section 65970 reads: "The Legislature finds and declares as follows: "(a) Adequate school facilities should be available for *children residing in new residential developments.*

"(b) Public and private *residential developments may require the expansion of existing public schools* or the construction of new school facilities.

"(c) In many areas of the state, the *funds for the construction of new classroom facilities are not available when new development occurs*, resulting in the overcrowding of existing schools.

"(d) *New housing developments frequently cause conditions of overcrowding* in existing school facilities which cannot be alleviated under existing law within a reasonable period of time.

"(e) That, for these reasons, *new and improved methods of financing for interim school facilities necessitated by new development are needed* in California." (Italics added.)

It is not disputed by either party that subdivision (e) of Government Code section 65970 spells out in clear unambiguous language that the purpose of the legislation is to provide a method of financing for interim school facilities necessitated by new development.

Plaintiff subdivider argues that the fees imposed under Government Code section 65974 constitute a "special tax" within the meaning of section 4 of article XIII A because (a) a "special tax" is one collected and earmarked for a special purpose, (b) a "special tax" includes new or increased exactions imposed by a city for revenue purposes and (c) the exaction is not a "special assessment."

In *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 231 [149 Cal.Rptr. 239, 583 P.2d 1281] the court upheld the validity of article XIII A against constitutional challenge. The court stated "...article XIII A consists of four major elements, a real property *tax rate* limitation (§ 1), a real property *assessment* limitation (§ 2), a restriction on *state* taxes (§ 3), and a restriction on *local* taxes (§ 4). Although petitioners insist that these four features constitute separate *subjects*, we find that each of them is

reasonably interrelated and interdependent, forming an interlocking, 'package' deemed necessary by the initiative's framers to assure effective real property tax relief. Since the total real property tax is a function of both rate and assessment, sections 1 and 2 unite to assure that *both* variables in the property tax equation are subject to control. Moreover, since any tax savings resulting from the operation of sections 1 and 2 could be withdrawn or depleted by additional or increased state or local levies of other than property taxes, section 3 and 4 combine to place restrictions upon the imposition of such taxes. Although sections 3 and 4 do not pertain solely to the matter of *property* taxation, both sections, in combination with sections 1 and 2, are reasonably germane, and functionally related, to the general subject of property tax relief."

The court in *Amador* made a very limited inquiry and concluded at page 224 that "[art. XIII A] is limited to the single subject of taxation (with particular emphasis upon real property taxation)." It did not define "special taxes" as used in section 4, article XIII A.

The plaintiff subdivider argues that the term "special tax" within the meaning of section 4, article XIII A has now been defined by the Court of Appeal in *County of Fresno* v. *Malmstrom* (1979) 94 Cal.App.3d 974 at page 983 [156 Cal.Rptr. 777]: "A 'special tax' is a tax collected and earmarked for a special purpose, rather than being deposited in a general fund."

A reading of *Malmstrom* leads us to conclude that the court did not define the term "special tax" within the meaning of section 4, article XIII A. It was merely illustrating one of the reasons why the special assessments in question would not be affected by article XIII A, i.e., that they were not taxes at all, special or otherwise. If the above definition of "special taxes" were valid, it could easily be avoided by depositing the exactions in the general fund. We know of no case that has defined the term "special tax" within the meaning of article XIII A, section 4.

The plaintiff subdivider asserts that the exaction in this case is not a "special assessment," again relying on *Malmstrom* which held that special assessments pursuant to the Municipal Improvement Act of 1913 and the Improvement Act of 1911 were not within the definition of "special taxes" of that section (§ 4, art. XIII A). Defendant city does not contend the exaction here in question is a special assessment.

The plaintiff subdivider next asserts that Government Code section 65970 et seq. are new or increased exactions for revenue purposes. He asks that we adopt the broad definition of "special taxes" opined by the Attorney General in 62 Ops.Cal.Atty.Gen. 673 (1979): "'[S]pecial tax' [as used in § 4, art. XIII A] means any new or additional tax imposed for revenue purposes by one of the enumerated agencies . . . ." In 62 Ops.Cal.Atty.Gen. 254 (1979) the Attorney General opined that the fees imposed under Government Code section 65974 constitute "special taxes" within the meaning of article XIII A. A reading of the Attorney General's opinions lead us to conclude that the definition is overly broad. It fails to consider the regulatory nature of fees, upon whom the fee is imposed and the purpose of the fee.

## II.

In *City of Glendale* v. *Trondsen* (1957) 48 Cal.2d 93 [308 P.2d 1] the court held that a charge upon every occupied premise in the city for rubbish collection services whether or not such services were in fact utilized was valid *either* as a police power measure or as an excise tax on the privilege of accumulating rubbish and having available a collection service. The court also held that the charges were not "special taxes" prohibited by the city charter without a two-thirds vote since the term "special taxes" related only to property taxes. Other cases in which revenues and charges were not deemed to be taxes are: *Arcade County Water Dist.* v. *Arcade Fire Dist.* (1970) 6 Cal.App.3d 232 [85 Cal. Rptr. 737] (monthly fire hydrant charges); *City of Oakland* v. *E. I. Wood Lumber Co.* (1930) 211 Cal. 16 [292 P. 1076, 80 A.L.R. 379] (wharfage and dockage charges); *Tulare County* v. *City of Dinuba* (1922) 188 Cal. 664 [206 P. 983] (franchise payments); *Trumbo* v. *Crestline Lake Arrowhead Water Agency* (1967) 250 Cal.App.2d 320 [58 Cal.Rptr. 538] (standby water charges). None of these cases supports the Attorney General's definition of special tax.

In *County of Fresno* v. *Malmstrom, supra,* at pages 980-981, the court concluded: ". . . a major thrust of article XIII A is aimed at controlling ad valorem property taxes. . . . Thus, section 1 limits the ad valorem tax rate to a maximum of 1 percent of market value; section 2 sets the 1975-1976 tax year as a 'base' for assessed value and limits further increases to 2 percent per year; section 3 provides that the Legislature may not impose new ad valorem taxes on real property; and section 4 provides that cities, counties and special districts may not impose new ad valorem property taxes." This conclusion is consistent with

the *Amador* case, *supra*, which states that the purpose of article XIII A was "to assure effective real property tax relief."

The exaction imposed under Government Code section 65970 et seq. is not an ad valorem property tax. It is not imposed upon the land in the subdivision as such but is imposed on the privilege of subdividing land which causes the overcrowding of local school facilities. Thus, as we shall explain, if the exaction is a tax, it is not a "special tax" within the meaning of article XIII A, section 4.

### III.

■ The police power is the inherent reserved power of the state to subject individual rights to reasonable regulations for the general welfare. (5 Witkin, Summary of Cal. Law (8th ed. 1974) p. 3734.) ■ One of the most common subjects of local police power regulations and that involved in this case is the area of land use and development. (See Witkin, *supra*, p. 3742.) The rationale for such regulations is summarized in Longtin, California Land Use Regulations (1977) page 617, as follows: "There is probably no issue in subdivision law which has generated more controversy than that of required dedications, improvements, fees, and other exactions as a condition of subdivision approval. The concept is quite simple in theory. The subdivider, in return for the privilege of developing his land, is required to dedicate land to public use, make public improvements, or pay required fees, all needed to mitigate the adverse impact of the subdivision on the community, provide governmental services to subdivision residents, and implement the requirements of the local general plan. The position of the public entity is that this arrangement is only fair. The developer has created a new, and cumulatively overwhelming, burden on local government facilities, and therefore he should offset the additional responsibilities required of the public agency by the dedication of land, construction of improvements, or payment of fees, all needed to provide improvements and services required by the new development. . . . ."

In *Associated Home Builders etc. Inc.* v. *City of Walnut Creek* (1971) 4 Cal.3d 633 [94 Cal.Rptr. 630, 484 P.2d 606, 43 A.L.R.3d 847], the Supreme Court upheld the parkland dedication requirements of the Subdivision Map Act, section 66477 (Quimby Act). A reading of Government Code section 66477 and its comparison with Government Code section 65974 shows that the school facilities section was modeled

after parkland dedication. A comparative summary of the significant provisions of both acts is as follows:

| School Facilities (§ 65974) | Quimby Act (§ 66477) |
| --- | --- |
| City may by ordinance require dedication of land or payment of fees for classroom facilities as condition to approval of residential development, provided: | City may by ordinance require dedication of land or payment of fees for park or recreational purposes as condition to approval of subdivision map provided: |
| (a) General plan provides for location of schools. | (d) General plan adopted containing recreational element. |
| (b) Ordinance in effect 30 days. | (a) Ordinance in effect 30 days. |
| (c) Land or fees to be used only for interim school facilities. | (c) Land or fees to be used only for park or recreational facilities to serve the subdivision. |
| (d) Land and fees shall bear reasonable relationship to need for schools caused by development. | (e) Land and fees shall bear reasonable relationship to use of park and recreational facilities by inhabitants of subdivision. |
| (e) Finding of consistency with general plan. | (d) Facilities in accordance with standards of general plan. |
| Only fees may be required for subdivisions containing 50 parcels or less | (g) Only fees may be required for subdivisions containing 50 parcels or less. |
| Section 65976. Schedule required specifying how land or fees will be used to solve overcrowding. | (f) Schedule required specifying how and when land or fees will be used to develop park or recreational facilities. |

 There can be no question that the subject of overcrowding in schools is as appropriate a subject for the exercise of the police power as the subject of inadequate open space, parks and recreational facilities dealt with in *Associated Home Builders* v. *City of Walnut Creek, supra*. The California Supreme Court has so indicated in *Builders Assn.*

*of Santa Clara-Santa Cruz Counties* v. *Superior Court* (1974) 13 Cal. 3d 225 [118 Cal.Rptr. 158, 529 P.2d 582] in which it upheld the validity of an initiative ordinance prohibiting rezoning of land for residential development unless the school districts within which the development was located certified that the developer had agreed to provide facilities to mitigate additional overcrowding resulting from the development.

As the above chart indicates, the regulatory scheme and system of exactions imposed to deal with the school problem and parks problem are practically identical. ■ As opposed to taxes which need not be related to benefits received or burdens created (see Witkin, *supra*, p. 3988), these exactions are expressly limited by their enabling legislation to an amount of land or fees which shall bear a reasonable relationship to the need for parks or school facilities generated by the development.[2]

The plaintiff subdivider contends that the *Walnut Creek* case "expressly limited its holding to the unique situation involving the relationship between development and the consumption of park land" and that the more general or diffuse need for schools would not be covered by the principles of that case. This contention is negated by the case of *Builders Assn. of Santa Clara-Santa Cruz Counties* v. *Superior Court, supra,* 13 Cal.3d 225. In that case the Supreme Court made reference to the *Jordan* v. *Village of Menomonee Falls* case (1966) 28 Wis.2d 608 [137 N.W.2d 442]) which involved school dedication. Footnote 6 of *Builders* states: "Plaintiffs suggest that the school district might require a property owner to dedicate land, construct improvements, or pay fees as a condition to certification. The imposition of such conditions, however, would not necessarily render the ordinance invalid, particularly if the conditions related to the need for increased facilities created by the zoning change. (See generally Feldman, *Constitutionality of Subdivision Exactions for Educational Purposes* (1972) 76 Dick.L.Rev. 651.) In *Jordan* v. *Village of Menomonee Falls* (1966), 28 Wis.2d 608 [137 N.W.2d 442, 448-450], the Wisconsin Supreme Court upheld an ordinance requiring dedication of land for school purposes, or payment of a fee in lieu of dedication, if the need for increased facilities

---

[2]There are five school districts affected by development in the City of Oxnard: Hueneme, Rio, Oxnard and Ocean View elementary school districts, and Oxnard Union High School District. Of these, Hueneme, Oxnard, and Oxnard Union High School districts have informed the city that they have experienced overcrowding and the three districts have received funds to mitigate overcrowding pursuant to ordinance No. 1781.

was attributable to the developer's activities; we in turn relied on *Jordan* in *Associated Home Builders etc., Inc.* v. *City of Walnut Creek* (1971) 4 Cal.3d 633, 644 [94 Cal.Rptr. 630, 484 P.2d 606], to uphold a statute requiring dedication of land for parks." (13 Cal.3d 225, at p. 232.)

The dedication of land or the payment of fees as a condition precedent to development is voluntary in nature. Even though the developer cannot legally develop without satisfying the condition precedent, he voluntarily decides whether to develop or not to develop. Development is a privilege not a right. In the *Walnut Creek* case, *supra*, at page 638 the court stated: "We held that the city was not acting in eminent domain but, rather, that a subdivider who was seeking to acquire the advantages of subdivision had the duty to comply with reasonable conditions for dedication so as to conform to the welfare of the lot owners and the general public."

It is undisputed that a subdivider must pay for the streets, sewers, lights, and parks which are reasonable conditions for dedication so as to conform to the welfare of the lot owners and the general public. Surely, it cannot be argued that any of these requirements are more important to the welfare of the lot owners and the general public than the education of children.

We do not find it necessary in disposing of this case to define "special taxes" within the meaning of article XIII A, section 4. The exaction here in question is not an ad valorem property tax. Its imposition on the subdivider is consistent with the mandate of the voters and the *Amador* case, *supra*, "effective real property tax relief."

DISPOSITION

The judgment is affirmed.

Kaus, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied February 5, 1981, and appellant's petition for a hearing by the Supreme Court was denied March 11, 1981.

APPENDIX A

Senate Bill No. 201

CHAPTER 955

An act to add Chapter 4.7 (commencing with Section 65970) to Division 1 of Title 7 of the Government Code, relating to land use.

[Approved by Governor September 21, 1977. Filed with
Secretary of State September 21, 1977.]

LEGISLATIVE COUNSEL'S DIGEST

SB 201, Smith School facilities: dedication of land and fees.

Under present law, a subdivider may be required to dedicate land to the school district at the time of approval of the tentative subdivision map and the school district is required, if it accepts the dedication, to repay the subdivider for the costs thereof pursuant to a specified formula.

This bill would authorize, in addition, a city or county, pursuant to an ordinance adopted at least 30 days previously, to require a dedication of land or fees, or both, for elementary or high school classrooms and related facilities, upon a finding that these facilities would be consistent with the general plan, as a condition to the approval of a residential development. Where a finding has been made by a school district that conditions of overcrowding exist, the city council or board of supervisors could not approve a proposed rezoning to, or granting of a permit for residential use, or approval of a tentative subdivision map unless such ordinance has been adopted or a finding is made of specified overriding factors. It would require the school district to account annually for such fees and the expenditure thereof.

Only the payment of fees may be required for subdivisions containing 50 parcels or less.

This bill would also provide that no appropriation is made and the state shall not reimburse local agencies for costs incurred by them pursuant to this bill.

The people of the State of California do enact as follows:

SECTION 1. Chapter 4.7 (commencing with Section 65970) is added to Division 1 of Title 7 of the Government Code, to read:

CHAPTER 4.7. SCHOOL FACILITIES

65970. The Legislature finds and declares as follows:

(a) Adequate school facilities should be available for children residing in new residential developments.

(b) Public and private residential developments may require the expansion of existing public schools or the construction of new school facilities.

(c) In many areas of the state, the funds for the construction of new classroom facilities are not available when new development occurs, resulting in the overcrowding of existing schools.

(d) New housing developments frequently cause conditions of overcrowding in existing school facilities which cannot be alleviated under existing law within a reasonable period of time.

(e) That, for these reasons, new and improved methods of financing for interim school facilities necessitated by new development are needed in California.

65971. If the governing body of a school district which operates an elementary or high school makes a finding supported by clear and convincing evidence that: (a) conditions of overcrowding exist in one or more attendance areas within the district which will impair the normal functioning of educational programs including the reason for such conditions existing; and (b) that all reasonable methods of mitigating conditions of overcrowding have been evaluated and no feasible method for reducing such conditions exist, the governing body of the school district shall notify the city council or board of supervisors of the city or county within which the school district lies. The notice of findings sent to the city or county shall specify the mitigation measures considered by the school district. If the city council or board of supervisors concurs in

such findings the provisions of Section 65972 shall be applicable to actions taken on residential development by such council or board.

65972. Within the attendance area where it has been determined pursuant to Section 65971 that conditions of overcrowding exist, the city council or board of supervisors shall not approve an ordinance rezoning property to a residential use, grant a discretionary permit for residential use, or approve a tentative subdivision map for residential purposes, within such area, unless the city council or board of supervisors makes one of the following findings:

(1) That an ordinance pursuant to Section 65974 has been adopted, or

(2) That there are specific overriding fiscal, economic, social, or environmental factors which in the judgment of the city council or board of supervisors would benefit the city or county, thereby justifying the approval of a residential development otherwise subject to Section 65974.

65973. As used in this chapter:

(a) "Conditions of overcrowding" means that the total enrollment of a school, including enrollment from proposed development, exceeds the capacity of such school as determined by the governing body of the district.

(b) "Reasonable methods for mitigating conditions of overcrowding" shall include, but are not limited to, agreements between a subdivider and the affected school district whereby temporary-use buildings will be leased to the school district or temporary-use buildings owned by the school district will be used.

(c) "Residential development" means a project containing residential dwellings, including mobilehomes, of one or more units or a subdivision of land for the purpose of constructing one or more residential dwelling units.

65974. For the purpose of establishing an interim method of providing classroom facilities where overcrowding conditions exist as determined necessary pursuant to Section 65971 and notwithstanding Section 66478, a city, county, or city and county may, by ordinance, require the dedication of land, the payment of fees in lieu thereof, or a combination of both, for classroom and related facilities for elementary or high schools as a condition to the approval of a residential development, provided that all of the following occur:

(a) The general plan provides for the location of public schools.

(b) The ordinance has been in effect for a period of 30 days prior to the implementation of the dedication or fee requirement.

(c) The land or fees, or both, transferred to a school district shall be used only for the purpose of providing interim elementary or high school classroom and related facilities.

(d) The location and amount of land to be dedicated or the amount of fees to be paid, or both, shall bear a reasonable relationship and will be limited to the needs of the community for interim elementary or high school facilities and shall be reasonably related and limited to the need for schools caused by the development.

(e) A finding is made by the city council or board of supervisors that the facilities to be constructed from such fees or the land to be dedicated, or both, is consistent with the general plan.

The ordinance may specify the methods for mitigating the conditions of overcrowding which the school district shall consider when making the finding required by subdivision (b) of Section 65971.

If the payment of fees is required, such payment shall be made at the time the building permit is issued.

Only the payment of fees may be required in subdivisions containing fifty (50) parcels or less.

65976. Following the decision by the city or county to require the dedication of land or the payment of fees, or both, the governing body of the school district shall submit a schedule specifying how it will use the land or fees, or both, to solve the conditions of overcrowding. The schedule shall include the school sites to be used, the

classroom facilities to be made available, and the times when such facilities will be available. In the event the governing body of the school district cannot meet the schedule, it shall submit modifications to the city council or board of supervisors and the reasons for the modifications.

65977. Where two separate school districts operate schools in an attendance area where overcrowding conditions exist for both school districts, the governing body of the city or county shall enter into an agreement with the governing body of each school district for the purpose of determining the distribution of revenues from the fees levied pursuant to this chapter.

65978. Any school district receiving funds pursuant to this chapter shall maintain a separate account for any fees paid and shall file a report with the city council or board of supervisors on the balance in the account at the end of the previous fiscal year and the facilities leased, purchased, or constructed during the previous fiscal year. In addition, the report shall specify which attendance areas will continue to be overcrowded when the fall term begins and where conditions of overcrowding will no longer exist. Such report shall be filed by August 1 of each year and shall be filed more frequently at the request of the board of supervisors or city council.

If overcrowding conditions no longer exist, the city or county shall cease levying any fee or requiring the dedication of any land pursuant to this chapter.

SEC. 2. There are no state-mandated local costs in this act that require reimbursement under Section 2231 of the Revenue and Taxation Code because there are no new duties, obligations or responsibilities imposed on local government by this act.

## APPENDIX B
### CITY COUNCIL OF THE CITY OF OXNARD
### ORDINANCE NO. 1781
### ORDINANCE PROVIDING FOR FEES FOR
### SCHOOL FACILITIES
### THE CITY COUNCIL OF THE CITY OF OXNARD DOES ORDAIN AS FOLLOWS:

PART 1. Division 4 of article IV of chapter 27 (consisting of sections 27-77.1 and 27-77.2) of the Oxnard City Code is repealed, effective 60 days after adoption of this ordinance.

PART 2. A new division 4 is added to article IV, chapter 27 of the Oxnard City Code to read as follows:

### DIVISION 4. SCHOOL FACILITIES

*Sec. 27-77.1. Title.*

This chapter shall be known and may be cited as the School Facilities Fee Ordinance.

*Sec. 27-77.2. Authority.*

This chapter is adopted pursuant to the provisions of chapter 4.7 (commencing with § 65970) of division 1 of title 7 of the Government Code.

*Sec. 27-77.3. Purpose.*

The purpose of this division is to provide a method for financing interim school facilities necessitated by conditions of overcrowding caused by new residential developments.

*Sec. 27-77.4. Regulations.*

The City Council may from time to time by resolution issue regulations to provide for the administration and implementation of this division.

*Sec. 27-77.5. General Plan.*

The City of Oxnard General Plan provides for the location of public schools. Where facilities are to be constructed from fees or land required to be dedicated hereunder or both, they shall be consistent with the General Plan.

*Sec. 27-77.6. Definitions.*

As used in this division:

(a) "Conditions of Overcrowding" means that the total enrollment of a school attendance area, including enrollment from proposed development, exceeds the capacity of such school attendance area as determined by the governing body of the district.

(b) "Decision-making Body" means the City Council, Planning Commission, and such other board, commission, office or official as may be authorized or empowered to approve or make recommendations for approval of any residential development.

(c) "Dwelling unit" means a building or portion thereof, or a mobile home, designed for residential occupation by one person or a group of two or more persons living together as a domestic unit. Dwelling unit shall not mean room additions to existing residential structures.

(d) "Approve a Residential Development" means for any residential development: (a) to grant a building permit; (b) to approve or recommend approval of a tentative final or parcel map for a subdivision of land, or (c) to grant or recommend the granting of a variance, special use permit or planned development permit.

(e) "Reasonable Methods of Mitigating Conditions of Overcrowding" shall include but are not limited to concepts such as:

(1) Agreements between a developer and the affected school district whereby temporary-use buildings will be leased to or for the benefit of the school district or temporary-use buildings owned by the developer or school district will be used.

(2) The use of relocatable structures, student transportation, classroom double sessions, year-round school programs, school boundary realignments, and elimination of low priority school facility uses.

(3) The use of available tax, and bond, and other revenue procedures, to the extend authorized by law.

(4) The use of funds which could be available from the sale of surplus school district real property and funds available from any other sources.

(f) Residential Development" means:

(1) The construction of one or more non-mobile home dwelling units;

(2) The construction of a mobile home park;

(3) The subdivision of real property for the purpose of such construction or for the purpose of converting existing multiple family structures to condominium or stock cooperative ownership; or

(4) The conversion to a residential use of an existing structure or part thereof pursuant to a variance, special use permit, planned development permit or other discretionary planning permit.

*Sec. 27-77.7. Findings by School District.*

Pursuant to Government Code Sections 65970 et seq., the governing board of any school district operating an elementary or high school may, with respect to any of its attendance areas located in whole or in part within the incorporated territory of the City of Oxnard, make and file with the City Council written findings supported by clear and convincing evidence that:

(a) Conditions of overcrowding exist in the school or schools of such attendance area which will impair the normal functioning of educational programs, including the reasons for such conditions existing; and

(b) All reasonable methods for mitigating conditions of overcrowding have been evaluated, and no feasible method for reducing such conditions exists.

*Sec. 27-77.8. Content of Findings.*

Findings filed pursuant to section 27-77.7 shall contain the following:

(a) A precise description of the geographic boundaries of the attendance areas to which the findings relate;

(b) A list of the mitigation measures evaluated by the governing board of the school district and a statement of the reasons why such measures were found to be infeasible;

(c) A summary of the evidence upon which such findings were based; and

(d) Such other information as may be required by regulations adopted by the City Council pursuant to this division.

*Sec. 27-77.9. Concurrence by City Council.*

After receipt of findings complying with the requirements of this division the City Council shall by resolution either concur in or reject such findings. Such findings may be rejected only if the Council determines that such findings are not supported by the weight of the evidence. At any time after it has concurred in or rejected such findings the Council may reconsider the matter.

*Sec. 27-77.10. School District Schedule.*

Any school district which files findings shall also file with the City Council a schedule specifying how the school district will use fees or land received by it pursuant to this division to solve the conditions of overcrowding. The schedule shall include the school sites to be used, and classroom facilities to be made available, and the time when such facilities will be available. If the school district cannot meet the schedule, it shall file modifications with the City Council together with a statement of the reasons for the modifications.

*Sec. 27-77.11. Findings by City Council.*

After receipt of the schedule the City Council shall by resolution determine whether the facilities and land use specified in such schedule are consistent with the General Plan.

*Sec. 27-77.12. Findings by Decision-Making Body.*

Within any attendance area where it has been determined pursuant to this division that conditions of overcrowing exist, no decision-making body shall approve a residential development unless such decision-making body first determines one of the following:

(a) That the school district has entered into an agreement with the applicant or some other person which provides a feasible means for mitigating any aggravation of such conditions of overcrowding which would be caused by the residential development;

(b) Where the application is for a building permit, that the applicant has paid the school fees as required by this division;

(c) Where the application is for an approval which does not include the grant of a building permit, that such approval is conditioned upon the payment of school fees pursuant to this division; or

(d) That there are specific, overriding physical, economic, social or environmental factors which justify approval of the residential development without requiring the payment of fees which would otherwise be required pursuant to this division.

*Sec. 27-77.13. Facilities Fee.*

Every person carrying out a residential development in an area where school overcrowding has been determined to exist, shall pay a facilities fee for each elementary and junior high school student and a further facilities fee for each senior high school student generated by the development. The amount of the facilities fee per student shall be set by resolution of the City Council after consultation with the affected school districts, and shall bear a reasonable relationship and will be limited to the needs of the community for interim elementary, junior high and high school facilities and shall be reasonably related and limited to the need for schools caused by the residential development. However, fees shall not exceed the amount necessary to pay five annual lease payments for interim facilities prorated per student. The fee shall be paid at the time of the issuance of a building permit, or when none is required, before occupancy of an existing structure as a condominium or for residential purposes.

*Sec. 27-77.14. Determination of Student Population Density and Dwelling Units.*

(a) Student population density for the purpose of this division shall be determined by resolution of the City Council based upon the number of students reasonably expected to be housed in each dwelling unit in the development.

(b) The number of dwelling units shall be determined by reference to the building permits issued permitting residential development; or by reference to the discretionary permit or map permitting conversion of existing structures to residential use.

*Sec. 27-77.15. Dedication or provision of facilities in lieu of fees.*

(a) Upon agreement by the developer, the City, and the affected school district, a developer may dedicate land in lieu of paying the fees required by this division. The fair market value of the land so dedicated shall be equivalent to the amount of fees otherwise required.

(b) The developer may at his option and expense, provide interim facilities meeting the standards and at a location established by the affected school district. The developer shall remove such facilities at the conclusion of the fifth school year at his expense unless the developer and the school district agree that such facilities may remain.

*Sec. 27-77.16. Application of Fees.*

(a) The fees collected pursuant to this division shall be remitted to the school districts to be expended as required by this section.

(b) The fees or land, or both, shall be used by the school districts in accordance with the requirements of chapter 4.7, division 1, title 7 of the Government Code.

*Sec. 27-77.17. School District Report; Frequency Thereof; Contents.*

Any school district receiving funds pursuant to this division shall maintain a separate account for any fees received and shall file a report with the City Council on the balance in the account at the end of the previous fiscal year and the facilities leased, purchased, or constructed during the previous fiscal year. In addition, the report shall specify which attendance areas will continue to be overcrowded when the fall term begins, and where conditions of overcrowding will no longer exist. Such report shall be filed by August 1 of each year and shall be filed more frequently at the request of the City Council.

If overcrowding conditions no longer exist, the City shall cease levying fees pursuant to this division for residential development in that attendance area.

PART 3. *Severability.*

If any section, subsection or portion of this division is for any reason held to be invalid or unconstitutional by the decision of any court of competent jurisdiction, such decision shall not affect the validity of the remaining portion of this division. The City Council hereby declares that it would have adopted this division and each section, subsection or portion thereof, irrespective of the fact that any one or more sections, subsections or portions be declared invalid or unconstitutional.

PART 4. Within fifteen days after passage the City Clerk shall cause this ordinance to be published one time in a newspaper of general circulation, published and circulated in the City. Ordinance No. 1781, was first read on October 30, 1979, and finally adopted November 6, 1979, to become effective thirty days thereafter.

/s/_____
Dr. Tsujio Kato
Mayor

ATTEST:
/s/_____
Mabi Covarrubias
Deputy City Clerk

STATE OF CALIFORNIA )
COUNTY OF VENTURA ) ss.
CITY OF OXNARD )

I, Mabi Covarrubias, Deputy City Clerk of the City of Oxnard, California, DO HERE-BY CERTIFY that the foregoing is a true and correct copy of ORDINANCE No. 1781 adopted by the City Council of said City of Oxnard at a Council meeting thereof held on *November 6, 19 79*.

 IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the City of Oxnard this 7th day of *November, 19 79*.

/s/ _____

Deputy City Clerk
City of Oxnard, California