BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE WESLEY CHESBRO, MEMBER OF THE STATE SENATE, has requested an opinion on the following question:
May a county require an applicant for a coastal development permit to agree to defend, indemnify, and hold harmless the county in any action by a third party brought to void the permit?
 CONCLUSION
A county may require an applicant for a coastal development permit to agree to defend, indemnify, and hold harmless the county in any action brought by a third party to void the permit.
 ANALYSIS
The question presented for analysis concerns a county ordinance that requires an applicant for a coastal development permit to agree to defend, indemnify, and hold harmless the county in any action brought by a third party to void the permit.[1] Is the indemnification requirement authorized by law? We conclude that it is.
The "law" in question is the California Constitution. "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal. Const., art. XI, § 7.) Often referred to as the "police power," this constitutional authority of counties and cities to adopt local ordinances was described by the Supreme Court in Candid Enterprises, Inc. v. Grossmont Union High School District (1985) 29 Cal.3d 878[39 Cal.3d 878], 885, as having the following broad scope:
"Under the police power granted by the Constitution, counties and cities have plenary authority to govern, subject only to the limitation that they exercise this power within their territorial limits and subordinate to state law. Apart from this limitation, the police power of a county or city under this provision is as broad as the police power exercisable by the legislature itself."
The regulation of land development is a traditional subject for the exercise of the constitutional police power by a county or city. (See Griffin Development Company v. City of Oxnard (1985) 39 Cal.3d 256,261-264; Santa Monica Pines, Ltd. v. Rent Control Board (1984)35 Cal.3d 858, 868-869; Birkenfeld v. City of Berkeley (1976)17 Cal.3d 129, 140.) The courts have upheld numerous types of conditions imposed by counties and cities when approving building permits. (See, e.g., Selby Realty Co. v. City of San Buenaventura (1973) 10 Cal.3d 110
[dedication of a right of way]; Friends of Westwood, Inc. v. City of Los Angeles (1987) 191 Cal.App.3d 259 [street access points and internal parking circulation]; Grupe v. California Coastal Com. (1985)166 Cal.App.3d 148 [public access for beach use]; Slagle Construction Co. v. County of Contra Costa (1977) 67 Cal.App.3d 559 [burial of overhead utility lines].)
Frequently, the condition imposed by a county or city involves the imposition of fees designed to mitigate the impact of the permitted land-use activity. (See, e.g., Golden State Homebuilding Associates v. City of Modesto (1994) 26 Cal.App.4th 601 [development impact fees]; Tahoe Keys Property Owners Ass'n v. State Water Resources Control Bd. (1994) 23 Cal.App.4th 1459 [lake pollution mitigation fees]; Trent Meredith, Inc. v. City of Oxnard (1981) 114 Cal.App.3d 317 [school facilities fees].) Required in return for the issuance of building permits or the granting of other development rights, such "development fees" reflect "a reasonable relation to the development's probable costs to the community and benefits to the developer." (Sinclair Paint Company v. State Board of Equalization (1997) 15 Cal.4th 866, 875; Shapell Industries, Inc. v. Governing Board (1991) 1 Cal.App.4th 218, 240.)
Similar to development fees, "regulatory fees" are imposed under the police power in connection with a county's or city's regulatory activities, but are not dependent upon government conferred benefits or privileges. (Sinclair Paint Company v. State Board of Equalization, supra, 15 Cal.App.4th at pp. 875-876.) "Regulatory fees in amounts necessary to carry out the regulation's purpose are valid despite the absence of any perceived `benefit' accruing to the fee payers" (id. at p. 876), where they do not exceed the reasonable cost of the service to be provided (Garrick Development Co. v. Hayward Unified School Dist. (1992)3 Cal.App.4th 320, 329-330). Regulatory fees include fees designed to cover a county's reasonable costs for processing land-use permits and applications (Mills v. County of Trinity (1980) 108 Cal.App.3d 656), fees on rental units to defray the costs of the administrative hearing process under a rent control ordinance (Pennell v. City of San Jose (1986)42 Cal.3d 365), fees on landfill deposits to cover the costs of a recycling program (City of Dublin v. County of Alameda (1993)14 Cal.App.4th 264), and fees on existing signs to recover the costs of administering a sign control ordinance (United Business Com. v. City of San Diego (1979) 91 Cal.App.3d 156).
Regulatory fees were described in United Business Com. v. City of San Diego, supra, 91 Cal.App.3d 156, as follows:
"The general rule is that a regulatory license or permit fee levied cannot exceed the sum reasonably necessary to cover the costs of the regulatory purpose sought. Such costs, however, include all those incident to the issuance of the license or permit, investigation, inspection, administration, maintenance of a system of supervision and enforcement. [Citations.] The Supreme Court in County of Plumas v. Wheeler, supra, 149 Cal. at page 764, explained: `It is not to be understood from these citations that the costs to the municipality which may be considered are simply those which arise directly in the enforcement of the regulatory provisions themselves. The license fee may properly be fixed with a view to reimbursing the city, town, or county for all expense imposed upon it by the business sought to be regulated. "In fixing upon the fee, it is proper and reasonable to take into account not the expense merely of direct regulation, but all the incidental consequences that may be likely to subject the public to cost in consequence of the business licenses."'
Finally, the municipality need only apply sound judgment and consider `probabilities according to the best honest viewpoint of informed officials' in determining the amount of the regulatory fee. [Citation.]" (Id. at pp. 165-166, fn. omitted.)
Here, the indemnity requirement is exacted by the county to cover litigation expenses associated with the issuance of a coastal development permit. If litigation expenses are incurred in defending the validity of the permit, the county has determined that the permit holder should bear such costs rather than have the costs be borne by the general taxpayers of the county. May the county make this determination in the exercise of its police power?
In Topanga Assn. for a Scenic Community v. County of Los Angeles (1989)214 Cal.App.3d 1348, the court considered the validity of a similar indemnity requirement. The requirement was attacked, in part, on the grounds that it would allow the county "`to transfer the cost of its administrative lapses, failures and omissions to' the developer." (Id. at p. 1365.) The court responded that such argument concerning public policy should be addressed to the legislative body adopting the requirement rather than to the courts. An indemnity requirement "is not subject to objection on the ground it contravenes public policy because, as a legislative enactment, it becomes public policy. [Citations.]" (Id. at pp. 1365-1366.)
Accordingly, we view it as a matter of public policy for a county to determine whether the litigation costs associated with the granting of a coastal development permit should be borne by the permit holder or by the general taxpayers of the county. A court will not interfere with a county's decision in this regard. No statute precludes a county from making such determination in the present circumstances.[2] Hence, a county may exercise its constitutional police power authority to enact the ordinance in question. (See California Rifle Pistol Assn. v. City of West Hollywood (1998) 66 Cal.App.4th 1302, 1310.)[3]
We conclude that a county may require an applicant for a coastal development permit to agree to defend, indemnify, and hold harmless the county in any action by a third party to void the permit.
 * * * * *
[1] "Indemnity may be defined as the obligation resting on one party to make good a loss or damage another party has incurred. [Citation.]" (Rossmoor Sanitation, Inc. v. Pylon, Inc. (1975) 13 Cal.3d 622,628.)
[2] Government Code section 66474.9 precludes requiring an indemnity agreement in specified situations, except as expressly authorized, involving approvals of subdivision maps pursuant to provisions of the Subdivision May Act (Gov. Code, §§66410-66499.37). (See also Pub. Resources Code, § 21089, subd. (b).)
[3] Because of the relationship between the applicant's indemnity obligation and the costs that would be incurred in defending the issuance of the permit, we perceive no issue concerning an unconstitutional taking of property without just compensation. (U.S. Const., 5th Amend.; Cal. Const., art. I, § 19; see Home Builders Association of Northern California v. City of Napa (2001) 90 Cal.App.4th 188, 194-198; Garrick Development Co. v. Hayward Unified School Dist., supra, 3 Cal.App.4th at p. 337.)