## JANIS DEVELOPMENT CORP., et al v.
## CITY OF SUNRISE, et al.

No. 73-6546.

Circuit Court, Broward County.

October 5, 1973.

48

54

Robert M. Ervin and E. C. Deeno Kitchen of Ervin, Vann, Jacobs & Odom, Tallahassee, for the plaintiffs.

Emerson Allsworth of Allsworth, Doumar & Schuler, Fort Lauderdale, for the intervening plaintiffs.

Parkhurst & LaHurd, Fort Lauderdale, for the defendant.

Marko, Stephany & Lyons, Fort Lauderdale, for Broward County.

Ross, Norman & Cory, Fort Lauderdale, for the City of Fort Lauderdale.

ARTHUR J. FRANZA, Circuit Judge.

*Final declaratory judgment:* This cause having come on to be heard and trial had upon plaintiffs' complaint, defendants' answer and defendant intervenors' answer, and the court, hearing testimony and aided by the able briefs supplied by counsel, finds the crucial question to be whether Broward County Ordinance 73-2 advances a legitimate public purpose in a manner consistent with the Florida Constitution and the command of the equal protection clause of the 14th amendment to the U.S. Constitution. Incorporated in that question is whether Broward County has the authority to levy according to this ordinance and, if it can, is the ordinance constitutional and is the charge a fee or a tax?

To determine these questions, we must look to sections of the Florida Constitution which permit or restrict fees and / or taxes.

Article VIII, §1 (f) of the Florida Constitution states —

(f) NON-CHARTER GOVERNMENT. Counties not operating under county charters shall have such power of self-government as is provided by general or special law. The board of county commissioners of a county not operating under a charter may enact, in a manner prescribed by general law, county ordinances not inconsistent with general or special law, but an ordinance in conflict with a municipal ordinance shall not be effective within the municipality to the extent of such conflict.

Article VII, §1 (a), further states —

(a) No tax shall be levied except in pursuance of law. No state ad valorem taxes shall be levied upon real estate or tangible personal property. *All other forms of taxation shall be preempted to the state except as provided by general law.* (Italics added).

Article VII, §9 (a), also states —

(a) *Counties,* school districts, and municipalities shall, and special districts may, be authorized by law to levy ad valorem taxes and *may be authorized by general law to levy other taxes,* for their respective purposes, except ad valorem taxes on intangible personal property and taxes prohibited by this constitution. (Italics added.)

Article III, §11 (a), states —

(a) There shall be no special law or general law of local application pertaining to:

\* \* \*

(2) assessment or collection of taxes for state or county purposes. . .

Is this ordinance a valid exercise of the county's police power, a special assessment, a regulatory fee or none of these?

How free is man's freedom as against the government's authority to restrict that freedom by tax or otherwise in the exercise of its police powers used ostensibly for the common good?

We have many unequal laws, written and unwritten, that we live with and endure. Perhaps the most motorious is the labyrinth of our income tax law and its shelters of payment geared to a very few. The intricacies of a tax shelter mean nothing to the average citizen. Even if he understood it, he could not afford to buy it.

In theory, we are all born free and subject to the same equality of law, but in practice we are not. There are unwritten laws that curtail a person's freedom. Can a woman be president? She is free enough to run for it but is she free enough to win it?

People work to support others who do not — some cannot work, some will not.

The point is, laws whether written or unwritten which produce inequality must be eliminated, first by education, then by legislation and, if all else fails, finally by court decree.

Laws infringe upon some aspect of our liberty, yet laws are necessary to protect those who are or would be taken advantage of by others. Some people want more freedom than they are entitled to and would deny others the minimum.

We do not need any more laws that tend to make part of the people unequal to others no matter the good intention or motive. It still erodes.

Government ought to search and reach for laws that make us all equal to start and all equal in our business with government and each other.

The 14th Amendment was first passed to insure equal protection to minorities but the courts have expanded it to cover and include every discrimination that needs redress.

It is a long and arduous process. Each case must run the full gamut of court action and be acted upon piecemeal by the judicial system.

The people thought the 14th amendment so important that it was passed even though the 5th amendment guarantees due process and the 9th and 10th amendments reserved all other rights and powers not enumerated in the constitution to the people.

The dictates, then, of the 14th amendment are compelling.

It does no good or little good to pass laws after the problem. We ought to be reasonably more visionary and meet the problem before it becomes insurmountable and before it is impossible to legally or economically correct it.

The haphazard, deplorable, sometimes exploitive development by certain complexes devouring everything in sight is terrifying. Such development consumes the land, the services of both state and local government, congests roads, pollutes rivers and ocean and in the long run destroys more effectively than an actual intent to destroy. The hare of unbridled growth cannot compete with the environmental protection afforded by the tortoise of government.

In so many places I looked, I saw no beauty. I saw greed-conceived, stark, man made caves; orange crates with running water and electricity, prostituting the environment and murdering nature's serenity and, more fearfully, destroying the very balance between nature and ourselves.

Common sense dictates that new construction has a tremendous impact on roads, all services and on the environment. But it is an aggravated impact, the origin already there. It is a total community problem, not a segregated ill produced by one industry.

If we could wall our county and stop growth from outside, how do we stop it inside?

Must we equate the birth rate to the death rate? If we can't, how do we expel or eliminate each other? By seniority of residence, or do we fall back on the Neanderthal rule of survival of the fittest.

Paper walls of ordinances around any city cannot endure. The moats of another century, the Alps, the Berlin Wall, the Great Wall of China, and the impregnable Maginot Line did not stand the test of time.

Even if we did successfully build a wall and other communities followed suit, where would our children and their children go? This type wall does nothing more than separate the people from their inalienable rights under our constitution.

Our children may see the day when what is unconstitutional now may be constitutional; but not now, not now, hopefully never.

The problem really is not new dwellings per se, but new people. New people have *all* rights and obligations of resident people — no more, no less, in this America. They are citizens of the United States and they are all equal — no charge, no premium — equal! How long ago were we new people?

There cannot be different grades of people, certainly not in the life style afforded by the purchase of dwellings. Our different social grades are apparent in our prejudices.

We need a comprehensive land use and zoning plan, at least county-wide, with the word variance stricken. We need an orderly, planned growth because indiscriminate overpopulation is terminal to any community. It would do no good to have certain cities out of 29 intelligently approach planning and have others run amuck.

Obviously, the Broward County Commissioners are acutely aware of the problem, as are many other public officials. The people are certainly aware. The answer or cure does not lie with this ordinance however. The answer must be found elsehere and it is there to be found. The state has begun.

If government is zoning 7,000 units on 246 acres, it ought not to later cry congestion. Government itself is the primary cause of that which they now abhor.

The county contends it has the power to enact the ordinance pursuant to Florida Statute 125.01(w) —

"Perform any other acts not inconsistent with the laws which are in the common interest of the people of the county, and exercise all powers and privileges not specifically prohibited by law."

The power to tax should not need the art of sophistry of interpretation. The power to tax should be strictly construed and then absolutely specific and commanding.

It is solely a people and legislative function, not one for the courts to carve out of ambiguous language. If government were allowed to tax in this instance without a direct authority from the constitution or the legislature, it would be a precedent to tax any group or industry that contributed to any total problem, whether it be roads, water, fire or police protection or any service rendered by government. For example, if one industry generates mountains and tons of debris after use by the public, should this industry be taxed extra for its removal by sanitation collectors?

This fee or tax does not fall within the purview of the police power authority of local government.

Our country is based on law and not men. The ends should not justify illegal or unconstitutional means. No matter how good the ends are, they cannot be constitutional if the means of arriving at the ends are not constitutional.

Laws that command one group of people to pay for a benefit inuring to all the people must be rejected. Every incidence that encroaches on our individual liberty or right must be struck down. If not, the pyramid of oppressive steps would finally reach that last step and irrevocably damage those organic ideals that our forefathers thought best for the future of our people expressed so eloquently in our historic, once-upon-a-mankind constitution.

The nomenclature of the monies attempted to be collected is "fee". In reality, it is a tax. Each consumer would be charged differing amounts as scheduled in the ordinance although each consumer's impact upon the community is approximately the same. A person adding to his home does not affect population impact, but he must pay. This schedule alone is repugnant to the 14th amendment guarantee of equal protection under the law, because of its disparity of payment.

The fee must have a reasonable relation to the services and, conversely, there must be a reasonable relation to the type and degree of service received to the amount of fee imposed.

The fee must be paid by the people who receive the services. If all receive it, all must pay.

A portion of the people cannot be singled out to do that which should be done by all.

Testimony revealed that Broward County would require 300 to 500 million dollars to upgrade our roads and an additional 50 million dollars per year to keep them current. The fees to Broward County under this ordinance would amount to 2 million dollars a year. The relation would be so minimal as to be non-existent.

Further, a fee to be charged is contingent upon the passage of an ad valorem tax county-wide of one mill. This tax can be arbitrarily enforced or not from year to year. Therefore, one group of new dwellings may be charged in 1974 and another group may not be charged in 1975, although presumably the 1975 dwellings would cause an impact.

The areas of service to be rendered in the ordinance could bear no relation whatever to the area supposedly generating the fee. The areas of service and the methods to arrive at it are too vague and uncertain and bear no reasonable relation to the fee imposed or where it is to be used. Consequently, it is a tax.

Therefore, when magnified through the eye of the 14th amendment to the U.S. Constitution, Article VII, §§1 and 9, Article III, §2, of the Florida Constitution, Florida Statute 125 and case law, it is apparent that the subject ordinance does violate the basic concepts of constitutional safeguards.

The county does not have the authority to levy the fee or tax as contemplated by its ordinance, either by constitution or statute. A tax must be explicit and authorized by the constitution or general law. The tax under this ordinance is not authorized. A fee must have a direct relationship to the services provided or the ills to be remedied. Even if this were a fee, it does not.

The court, in reaching its decision, has considered all of the competent and relevant evidence presented. Though a legislative enactment of Broward County is not lightly set aside, no presumption of regularity on behalf of Broward County Ordinance 73-2 may withstand the constitutional and legal defects which appear both on the face of same and in its application.

Accordingly, Broward County Ordinance 73-2 as it pertains to the imposition of a fee is declared unconstitutional pursuant to the above tenets.

It is ordered and adjudged that the defendant county and defendant municipalities, and any other municipalities purporting to

act under authority of Broward County Ordinance 73-2, or any municipal adoption of said ordinance, are permanently enjoined from further enforcement of Broward County Ordinance 73-2, or municipal adoption of same, and from any efforts or attempts to collect any fees, charges, or taxes under authority of same.

The defendant county and defendant municipalities, and any other municipalities purporting to have previously acted under authority of Broward County Ordinance 73-2, or municipal adoption of said ordinance, shall forthwith refund in full any and all amounts of "impact fees" or taxes collected under authority of same, said refund in full to be completed not more than 30 days after the date of this final judgment.

A certified copy of this final declaratory judgment shall be served by the clerk by certified mail on the chief executive officer of each municipality in Broward County.

Costs and expenses of these proceedings, the amount of which shall be determined at an appropriate later date, are awarded to plaintiffs against defendants.

In light of the foregoing final declaratory judgment, plaintiffs' pending motions, upon which decision was reserved, are rendered moot and no decision shall be rendered thereon.