312 So.2d 763 (1975)
CITY OF DUNEDIN, Florida, Appellant,
v.
CONTRACTORS AND BUILDERS ASSOCIATION OF PINELLAS COUNTY, a Florida Corporation, et al., Appellees.
CONTRACTORS & BUILDERS ASSOCIATION OF PINELLAS COUNTY, a Florida Corporation, et al., Appellants,
v.
CITY OF DUNEDIN, Florida, Appellee.
Nos. 74-401, 74-1017.
District Court of Appeal of Florida, Second District.
April 30, 1975.
Rehearing Denied June 10, 1975.
*764 C. Allen Watts of Fogle & Watts, DeLand, for appellant/appellee City of Dunedin.
John T. Allen, Jr., St. Petersburg, for appellees/appellants Contractors and Builders Assn., et al.
Ralph A. Marsicano, Tampa, and Burton M. Michaels, Tallahassee, for amicus curiae, Florida League of Cities, Inc.
GRIMES, Judge.
This case involves the authority of a municipality to charge a so-called "impact fee" for the privilege of connecting to its water and sewer systems.
The City of Dunedin (city) passed certain ordinances which imposed a fee of $325 for each water connection and $375 for each sewer connection "to defray the cost of production, distribution, transmission and treatment facilities for water and sewer provided at the expense of the City of Dunedin." These fees were in addition to charges imposed for the cost of physically connecting into the systems. Certain local contractors, together with the Contractors and Builders Association of Pinellas County, filed suit seeking declaratory and injunctive relief against the imposition of these fees. The final judgment stated in part:
"The City of Dunedin is enjoying, or suffering, depending upon one's viewpoint, growth problems. The demand for sewer and water connections has strained the capabilities of the sewer and water departments to near the breaking point. Attempting to cope with the demand for sewer and water connections, the City adopted Ordinance 72-26, which as amended assessed against new connections a total `impact fee' of approximately $700.00 for dwelling or commercial units.
"... The salutory purpose of Ordinance 72-26 strikes a sympathetic chord with the Court. Implicit in the ordinance is the philosophy that those who are creating the inordinate demand for services ought to bear the prime cost of the same... ."
However, the court concluded that the city was without authority to impose the fees and entered a judgment enjoining their collection.
There are three reported Florida decisions dealing with a form of impact fee. The cases of Venditti-Siravo, Inc. v. City of Hollywood, 1973, 39 Fla. Supp. 121, and Janis Development Corp. v. City of Sunrise, 1973, 40 Fla. Supp. 41, dealt with ordinances which imposed a surcharge on building permits. The funds derived by the surcharge in Venditti were to be used for acquiring and developing parks, and the funds collected in Janis were to be used for roads. Hence, there was only a nebulous relationship between the subject upon which the charge was being imposed and the facilities for which the money was going to be spent. In each case the court properly characterized the fee as a tax which was beyond the city's authority to impose. In Pizza Palace of Miami, Inc. v. City of Hialeah, Fla.App.3d, 1970, 242 So.2d 203, our sister court held that a sewer connection fee could not be charged against a lessee because the ordinances of the city *765 provided that the owner had the responsibility for connecting to the sewer lines. The court pointed out that it was unnecessary to its decision to pass upon the validity of the sewer connection charge itself. Thus, it is evident that the case sub judice is a case of first impression in Florida.
The imposition of fees such as those in this case have been upheld in several other jurisdictions.[1] In Brandel v. Civil City of Lawrenceburg, 1967, 249 Ind. 47, 230 N.E.2d 778, the court sustained an ordinance setting a $200 fee for those who connected to a new section of the sewage system and a $62.50 fee for those who connected to the old sewage system. The court noted that the fee was in the nature of a "use tax" for the "services" of disposing of sewage from particular property. The court rejected a charge of discrimination, pointing out that the original cost of the old system was less than that of the new system and, therefore, it was logical that the charges for its use would be less than those for the use of the new system.
In Hartman v. Aurora Sanitary District, 1961, 23 Ill.2d 109, 177 N.E.2d 214, the District established a capital improvement fund for the purpose of building new sewage facilities to be financed by a $160 connection fee charged for connections in recently annexed territories. The connection fee for the original territory of the District was $15. In upholding the $160 fee, the court said:
"... It is patent that the rapid expansion of our municipalities has rendered inadequate prior facilities developed for the health and welfare of the community. It is only proper that all citizens of the community should share equally in the cost of maintaining a sanitary plant which benefits the health and welfare of the entire community by the proper disposal of sewage. It would seem equally fair that those property owners who benefit especially, not from the maintenance of the system, but by the extension of the system into an entirely new area, should bear the cost of that extension... ."
A city ordinance raising the sewer connection charge for single family dwellings from $25 to $255 was attacked in Hayes v. City of Albany, 1971, 7 Or. App. 388, 490 P.2d 1018. The money was earmarked for the construction and expansion of the city's sanitary sewer system. The plaintiff contended the ordinance was invalid as being a tax and further argued that even though it be considered a "user charge" it was void because it was not "just and equitable." In upholding the ordinance, the Oregon court distinguished several adverse decisions on the basis that in those cases the funds collected could be used for general public purposes, whereas the proceeds from the sewer connection charge were limited to the development and maintenance of the sewage disposal system. The court concluded that the city had the power to make a charge reasonably commensurate with the burden currently imposed or reasonably anticipated upon the system.
One of the most recent cases on the subject is Home Builders Association of Greater Salt Lake v. Provo City, 1972, 28 Utah 402, 503 P.2d 451, in which the City of Provo enacted an ordinance imposing a sewer connection fee for each living unit in newly constructed buildings. The purpose of the fee, which admittedly exceeded the cost of inspection and connection, was to provide the requisite funds to improve and enlarge the sewer system. In sustaining the ordinance, the court held that the fee was neither a tax nor an assessment but a payment for services furnished.
While many parts of this country are experiencing growth due to the population explosion, at the present time no state is more imminently faced with the problems *766 inherent in population increase than Florida. Where a city's water and sewer facilities would be adequate to serve its present inhabitants were it not for drastic growth, it seems unfair to make the existing inhabitants pay for new systems when they have already been paying for the old ones. The question posed here is whether the city could legally finance the expansion through increased connection charges. The court below concluded that the connection charge was, in reality, a tax. If this is so, it cannot be sustained because a municipality cannot impose a tax, other than ad valorem taxes, unless authorized by general law.[2]
In construing Fla. Stat. § 180.13 (1971) our Supreme Court in Cooksey v. Utilities Commission, Fla. 1972, 261 So.2d 129, said:
"Implicit in the power to provide municipal services is the power to construct, maintain and operate the necessary facilities. The fixing of fair and reasonable rates for utilities services provided is as incident of the authority given by the Constitution and statutes to provide and maintain those services... ."
The imposition of fees for the use of a municipal utility system is not an exercise of the taxing power nor is it the levy of a special assessment. State v. City of Miami, 1946, 157 Fla. 726, 27 So.2d 118. In our view, connection fees such as those involved in this case do not constitute a tax[3] but a charge which may be made for the use of the utility service pursuant to the authority of its charter and Fla. Stat. § 180.13 (1971),[4] providing they meet the criteria hereafter set forth. We hold that where the growth patterns are such that an existing water or sewer system will have to be expanded in the near future, a municipality may properly charge for the privilege of connecting to the system a fee which is in excess of the physical cost of connection, if this fee does not exceed a proportionate part of the amount reasonably necessary to finance the expansion and is earmarked for that purpose. Having announced the rule, we must now determine its applicability to the instant case.
The evidence clearly demonstrates dramatic growth within the area logically served by the city systems. The evidence also supports the fact that the sewer and water systems were running near capacity and the expansion of these systems was imminent. The only expert witness at the trial testified that the average charge per connection necessary to finance the expansion within the area to be reasonably served was $357 for water and $631 for sewer, both of which were in excess of the fees established by the ordinance. Hence, the amount of the fee appears reasonable for the purpose for which it is imposed. The trial judge found the fees to be unreasonable charges, but this was premised upon his view that the cost of prospective capital improvements could not be considered in setting the amount of the connection charges.
Our greatest concern in this case was whether the funds collected as a result of the fees were clearly earmarked for capital expansion. The language of the ordinances does not unequivocally mandate the use of the funds for capital improvements. Yet, the evidence shows that the fees were established for this purpose, and the city *767 has steadfastly handled the funds separately with a view toward expanding the monies only for improvements to the respective systems. In this regard we are assisted by the finding of the court below "that the proceeds derived from the $700 connecting fees are earmarked by the city for capital improvements to the systems as a whole." Clearly, the use of such funds must be so limited, and in view of the position taken by the city in this litigation, any use of the funds contrary to these purposes would be subject to appropriate legal sanction.
At the trial, the appellees also attacked the ordinances on constitutional grounds. The judge did not pass on the constitutional questions because, having determined that the fee was a tax which was beyond the authority of the city to assess, he deemed it unnecessary to do so. What we have already said adequately disposes of the constitutional questions. We believe the ordinances are constitutional and do not unlawfully discriminate against newcomers as asserted by appellees. The fees are payable by every person who hereafter connects into the city's water or sewer system, even if he has lived in the city all his life and his property is in the heart of the city. See Home Builders Association of Greater Salt Lake v. Provo City, supra; Airwick Industries, Inc. v. Carlstadt Sewerage Authority, 1970, 57 N.J. 107, 270 A.2d 18.
The ordinances in question are valid and enforceable. Therefore, the claims for refund sought in appellees' cross-appeal cannot be sustained.
Appellees also filed a petition to review as inadequate a cost judgment entered subsequent to the final judgment. Pursuant to Craft v. Clarembeaux, Fla.App.2d, 1964, 162 So.2d 325, this petition was treated as a Notice of Interlocutory Appeal. In light of our decision in this case, the cost judgment must also be set aside.
Reversed.
BOARDMAN, A.C.J., and SCHEB, J., concur.
NOTES
[1] For decisions to the contrary, see, e.g., Lloyd E. Clarke, Inc. v. City of Bettendorf, 1968, 261 Iowa 1217, 158 N.W.2d 125; Norwick v. City of Winfield, 1967, 81 Ill. App.2d 197, 225 N.E.2d 30.
[2] Fla. Const. Art. VII, §§ 1, 9 (1968); City of Tampa v. Birdsong Motors, Inc., Fla. 1972, 261 So.2d 1.
[3] We cannot accept appellees' argument that since a property owner within the municipal limits is required to use the city's sewer facilities, the sewer connection ordinance has the effect of imposing a tax. It is only when building is commenced upon his property and the need for sanitary facilities arises that a landowner must pay the fee. Just because he is prohibited from using a septic tank doesn't mean he is being taxed. See Brandel v. Civil City of Lawrenceburg, supra.
[4] No one doubts that a municipality has the power to make reasonable charges for water and sewer services. The question is whether the cost of projected capital improvements can be considered in setting the charges.