### HOME BUILDERS v. BOARD OF COUNTY COMMISSIONERS OF PALM BEACH COUNTY, et al
Case No. 79 3281 CA (L) 01 A
Fifteenth Judicial Circuit, Palm Beach County
March 26, 1982

Grover Herring, for plaintiff.

Charles Schoech, for defendant.

LEWIS KAPNER, Circuit Judge.

This matter is presented upon a complaint for declaratory and injunctive relief. Plaintiffs contend that Ordinance 79-7 (Fairshare Ordinance),

which imposes an "impact fee" on new development for the purpose of financing proposed new road construction, is invalid. Plaintiffs contend that this "fee"[1] is not a fee at all but is in reality a tax and is therefore invalid.

The court has considered the evidence and law, all of which has been ably presented by counsel, and concludes that the "fee" is in fact a fee and is therefore valid. The pertinent facts are as follows:

On June 19, 1979 the Board of County Commissioners of Palm Beach County passed Ordinance 79-7, the "Fair Share Ordinance". Basically, this ordinance imposes "impact fees" on new development, the money generated to be used to finance new road construction. A zone system (40 zones, approximately 6 miles square) is set up and money collected in each zone is to be spent only in that zone.

Plaintiffs then commenced this class action, seeking to declare the ordinance invalid as a taxing measure.

While this litigation was pending, the county amended Ordinance 79-7, as indicated above, but the changes were basically semantic altering some definitions and inserting language for the purpose of imparting a regulatory nature to the ordinance. The amendment also deleted the requirement that the fee" is to be paid before the building permit is issued and also deleted the clause of the original ordinance which declared any permit void where the "fee" is not paid.

At the outset, some basic general definitions are in order:

TAX: A payment required by government upon persons or property for the purpose of supporting government. E.G., ad valorem taxes. See *Black's Law Dictionary*, 4th Ed., pg. 1628, th Ed., pg. 1307.

FEE: (a) A payment imposed by government for the use of services, privileges or goods granted by government. E.g., automobile inspection fees. See *Black's Law Dictionary*, 5th Ed., pg. 553; or,

(b) A payment imposed by government for the purpose of regulation. E.g., county occupational licenses. See *Broward County v. Janis Development Corporation*, 311 So.2d 371, 375 (4th DCA 1975); *Bateman v. City of Winter Park*, 37 So.2d 362 (1948); See also *Black's Law Dictionary*, 5th Ed., pg. 1078, citing *Gulf & Ship Island Railroad Co. v. Hewes*, 183 U.S. 66, 22 Sup. Court. 26, 46 L. Ed. 83 (1901).

---

[1] Because the central issue here is whether the "fee" in question is a true fee rather than a tax, the court will refer to the "fee" imposed by the ordinance, or any "fee", the validity of which has been questioned, in quotation marks.

SPECIAL ASSESSMENT:[2]   A payment required by government imposed according to a special advantage or benefit accruing to the person or property assessed. E.g., assessment of property within a specified location for construction of street lamps. *Black's Law Dictionary*, 5th Ed., pg. 107; See also *Davies v. City of Lawrence, 545 P.2d 1115, 1120 (Kansas); Lainhart v. Catts*, 75 So. 47, 52-53 (Fla. 1917).

This ordinance, as do legislative acts generally, comes to this court clothed with a presumption of validity. The court may not substitute its judgment for that of the legislative authority, as long as the legislative authority is not arbitrary, unreasonable, or discriminatory. This presumption is to be entertained not only with respect to presumed reasonableness of the ordinance's terms but also with respect to factual and legal conclusions arrived at by the legislative body. See *Gallant v. Stephens*, 358 So.2d 536 (Fla. 1978); *Lainhart v. Catts, supra; Bitter v. City of Lincoln*, 85 NW.2d 302, 308 (Neb. 1957); *Rosche v. City of Hollywood, supra*. The wisdom or fairness of this ordinance is not the issue.[3]

The threshhold issue here is whether this "fee" is in fact a fee or a tax. If a tax, the ordinance falls because the county has no authority to impose a tax such as this. If a fee, the ordinance stands because it otherwise conforms to constitutional and statutory requirements.

The validity of public levies similar to that used here has been the subject of much recent litigation in Florida and throughout the country and has been the subject of scholarly inquiry as well. See for example, *Contractors and Builders Association of Pinellas County v. City of*

---

[2]Although it is not contended that this "fee" is a special assessment, certain similarities exist between the concept of special assessment and that of both a tax and a fee, thus rendering a definition of special assessment useful. Cf., e.g., the analysis in *Rosche v. City of Hollywood*, 55 So.2d 909 (Fla. 1952) and *Fisher v. Board of County Commissioners of Dade County*, 84 So.2d 572 (Fla. 1956) with that used in *Contractors and Builders Association of Pinellas County v. City of Dunedin*, 329 So.2d 314 (Fla. 1976).

---

[3]Coincidentally, as this opinion was being prepared, an article appeared in the *Palm Beach Times*, March 24, 1982, reporting that the City of West Palm Beach has charged a couple $1,110.00 for connecting the city's water and sewerage plant to their small home. The purpose of that fee, as is the purpose of the fee in this case, is not for the *use* of sewerage services, but for capital expansion of same. It takes little imagination to realize that if this form of public finance flourishes, and if the government continues to expand its functions and services as it has in the past, society will soon reach a point where "impact fees" for roads, parks, sewerage, and other forms of government services, will make it financially impossible to build any new homes at all, regardless of the fact that fees may be reasonably related to the costs of expansion. There is merit to Plaintiffs' concern on this point, but it is a concern that goes to the wisdom or fairness of the ordinance and not to its legality.

*Dunedin, supra,* (also at 312 So.2d 763, and, 358 So.2d 846); *Broward County v. Janis Development Corporation, supra,* (also at 40 Fla. Supp. 41); *Wald Corporation v. Metropolitan Dade County,* 338So.2d 863 (3rd DCA 1976); *Call v. City of West Jordan,* 606 Pa. 2d 217 (Utah 1979); *Jordan v. Village of Menomonee Falls,,* 137 NW 2d 442 (Wisc. 1965), appeal dismissed 385 U.S. 4 (1966); *Homebuilders Association of Greater Kansas City v. City of Kansas,* 555 SW 2d 832 (Mo. 1977).

The two cases most applicable to this case are *Broward County v. Janis Development Corp., supra,* and *Contractors and Builders Association of Pinellas County v. City of Dunedin, supra.*

*Janis* involved a "fee" assessed builders by the county for the purpose of building roads in "the vicinity of the project in which the charges were to be collected." That "fee" was invalidated on the ground that it was a tax rather than a fee, the court reasoning that it generated more money than was reasonably necessary to regulate the activity and that it bore no reasonable relation to the services provided. The court specifically discussed the "fee" in terms of an alleged regulatory fee, and Broward County apparently justified the fee on that ground. See *Dunedin*[4], supra at 318. Indeed, Broward's own definition of its "fee" classically described not a fee at all, but a tax: "Broward relies solely upon the proposition that the police power invests it with the right to exact an impact fee for the good of the *community* to provide services for the *community*." *Janis, supra* at 375 (emphasis added); Cf. definition of tax, pg. 2 of this opinion.

*Dunedin* involved a "fee" imposed for capital improvements to that city's water and sewerage system. This "fee" was invalidated, but the holding of the case establishes that such "fees" are valid if they meet the following test:

1. New development must require that the present system of public facilities be expanded; and

2. The fees imposed on users must be no more than what the local government unit would incur in accomodating the new users of the system; and

3. The fees must be expressly earmarked and spent for the purposes for which they were charged.

Plaintiffs contend that Janis stands for the proposition that any "fees" imposed upon builders for road construction are prohibited, and that the *Dunedin* holding permits "fees" only in utility type cases.

---

[4]Where the term *"Dunedin"* is used it refers to the Florida Supreme Court decision cited at 329 So.2d 314.

Their interpretation of the former is too broad and of the latter too narrow.

The "fee" in *Janis* is clearly different than the "fee" here and it is also different than the "fee" in *Dunedin* as described therein:

> "Only if the monies collected in . . . *Janis* Development had been used to underwrite the administrative costs of issuing building permits, or other costs incurred in enforcing building codes, would those cases be analogous to the present one . . . The analogy would be very close if the fees had been earmarked for future capital outlay . . .

> But the fees in *Janis* . . . bore no relationship to . . . the costs of the regulation which was supposed to justify their collection . . . In contrast, evidence was adduced here that the connection fees were less than costs *Dunedin* was destined to incur in accomodating new users . . . . We . . . (reject) the contention that such connection fees are taxes." *Dunedin*, supra at 318.[5]

There is nothing in *Janis* that justifies a conclusion that the court intended to absolutely invalidate "impact fees" on development for road construction. If anything, the fact that the court discussed the specific defects in the ordinance as it applied to the particular case would suggest that the court at the very least left the issue open. For example:

> "(T)he amount of the fee . . . is not equitable with land allocation . . . . The fee . . . is simply an exaction of money . . . for roads . . . . There are no specifics provided . . . as to where and when these monies are to be expended for roads . . . This fee, therefore, is an exercise of the taxing power." *Janis*, supra at 375 (emphasis added).[6]

---

[5]In a footnote, the court cited *Hartman v. Aurora Sanitary District*, 177 NE 2d 214, 219 (Ill. Supreme Court 1961): "We have found that such reasonable charges have been uniformly sustained *as a service charge* rather than a tax."

[6]Cf., *Village of Royal Palm Beach v. Homebuilders and Contractors Assoc. of Palm Beach County*, 15th Judicial Circuit, Case No. 79 1538, affd., 386 So.2d 1304 (4th DCA 1980) (Fla.). In this case the court invalidated a "fee. . .to provide funds for administrative service, police protection, fire protection and maintenance service." This "fee" was invalidated not because it was collected for the wrong purpose (governmental services) but because the provisions for spending the funds were not specific enough.)

By the same token, there is nothing in *Dunedin* to suggest that the court intended to limit its holding to fees for water and sewerage systems or similar "proprietory" functions. Except for their discussion of the city's statutory authority to act as a corporate proprietor of its water and sewerage systems, one could easily substitute "government" for "proprietor" throughout the opinion and it would not lose its logic and continuity. Furthermore, the court distinguished cases invalidating "fees" collected for road and park purposes with no reference whatsoever to the distinction between "fees" for governmental purposes and "fees" for propriety purposes.

In a broader sense, cases involving similar methods of public levies have been decided numerous times in Florida and throughout the nation. The court is unaware of any such cases which held that "impact fees", or similar public charges, otherwise valid, were invalid because they were collected in connection with, and for use of, a "governmental" as opposed to "proprietory" function.

Thus, neither *Janis* nor *Dunedin* prohibits the imposition of an "impact fee" for governmental functions, nor do they specifically permit it. The validity of such a "fee" depends not on whether the money is raised and spent for sewerage plants, roads, courthouses or what have you.[7] It depends simply and solely on whether the *Dunedin* test is met:

1. New development must require that the present system of public facilities be expanded; and

2. The fees imposed on users must be no more than what the local government unit would incur in accomodating the new users of the system; and

3. The fees must be expressly earmarked for the purposes for which they were charged.

---

[7] Concededly, some expenditures are so clearly "governmental" (e.g., national defense) as to be practically precluded from meeting the *Dunedin* test. The location of Camp LeJeune in Jacksonville, North Carolina, for example, probably makes that city no safer than the rest of the nation. Most public services, though, do not fit into such clear, extreme categories. They might or might not be of special benefit to the person who is required to pay for them, and this includes the providing of "personal services," such as schools, or "governmental services'," such as police and courthouse annexes. In the latter instances, for example, the courthouse annex in Belle Glade serves the public generally, but it also serves the residents of Western Palm Beach County. The task in all these cases, as in this case, is to eschew the use of judicial shortcuts and to consider and balance the benefit to the payors as distinct from the public generally, in accordance with the *Dunedin* test, on a case by case basis, even in those cases which, like national defense, would be unlikely to qualiy.

Applying that test to the "impact fee" here, it is clear that plaintiffs have failed to overcome the presumption of validity.[8]

Unlike other similar ordinance, such as the ones in *Janis* and *Royal Palm Beach*, this ordinance has been meticulously drafted with a view toward meeting exactly the requirement set out in *Dunedin*, viz., to expressly earmark the funds and to ensure that the fees collected will be no more than what is needed to accomodate the new users of the system, all in response to a demonstrated need to expand public facilities caused by the new development. Defendant here, as Dunedin attempted to do in *Dunedin*, has made reasonable provisions to "transfer to the new user . . . a fair share of the costs new use of the system involves." *Dunedin*, supra at 317-318.

A review of the components of this ordinance demonstrates this. The "fee" required of all developers is determined by a formula, one for residential development and the other for non-residential development. The amount is arrived at by using a traffic impact analysis which may be prepared by the developer himself or by the county, at the developer's option. If no analysis is available, the "fee" is a fixed amount determined by the County with the help of thorough expert analysis.

---

[8]Conceptually, the court is concerned with the fact that the builder is required to pay a "fee" presumably in return for benefits" (roads), but the ownership of these roads go not to the payor but they remain with the county. Thus, it would seem that the county and not the individual is the *primary* beneficiary.

To use a private property analogy, it is as if a department store customer was assessed $10 per transaction to pay for an enlargement of the department store. True, the customer would benefit from the enlargement, but the department store, by continuing to *own* the expanded building, clearly would be the *primary* beneficiary. This problem could be avoided if the payor were given a bond secured by the capital expansion. If that were done, the concerns raised by plaintiffs regarding the open assessibility of public roads, etc., would be irrelevant because then the payor would clearly be receiving a quid pro quo. As it is, plaintiff's arguments should be given great consideration, but they must be rejected in the light of *Dunedin* which imposed no such quid pro quo requirements in determining whether a "fee" such as this one is valid.

The formula is as follows:

A.  Residential:

$$\text{Fee} = \frac{\text{External trips divided by 2*}}{\text{Capacity}} \times \text{Cost to Construct.} \atop \text{1 lane for 1 mile}$$

*Given a 50/50 directional split

B.  Non-residential:

$$\text{Fee} = \frac{\text{External trips divided by 2*}}{\text{Capacity}} \times \text{Cost to Construct} \atop \text{1 lane for 1½ mile}$$

*Given a 50/50 directional split

(a) "External trips" is the number of trips generated by the land development activity (the trip generation rate)

(b) The "directional split" assumed for each set of trips from the land development activity is 50/50, the most conservative estimate possible.

(c) "Capacity" is the capacity of the roadway system in the year 2000.

(d) "Construction costs" are assumed to be $300,000 per lane mile, and $150,000 per 1½ lane mile.

(e) The average trip length assumed is one mile for residential land development activity and 1½ for non-residential land development activity.

(f) The ordinance assumes capacity of the system will be 6,000 vehicles per day per lane.

Fees collected by the county are not to be spent indiscriminately but must be placed in a trust fund to be spent only for new road improvements within the zones in which they are collected. (The ordinance divides the county into 40 separate zones.) If the fees are not expended within a certain amount of time, they are to be returned.

To reiterate, the *Dunedin* test is as follows:

1.  New development must require that the present system of public facilities be expanded; and

2.  The fees imposed on users must be no more than what the local government unit would incur in accomodating the new users of the system; and

3.  The fees must be expressly earmarked and spent for the purposes for which they were charged.

## I.

## NEW DEVELOPMENT MUST REQUIRE THAT THE PRESENT SYSTEM OF PUBLIC FACILITIES BE EXPANDED:

The county, in adopting this ordinance, relied upon expert consultation to arrive at its determination that new development will require expansion of the county's road system in the vicinity of the new development. Defendants have offered expert testimony to confirm this. It is admirable that the county has gone to such lengths, but it is hardly necessary. The court can take judicial knowledge that new development places new demands on the road system in its vicinity. County governments are not bound by the same strict fact finding constraints as are courts, and courts, in turn, must defer to reasonable judgments made by the county governing body. Thus, the first part of the *Dunedin* test is easily met.

## II.

## THE FEES IMPOSED ON USERS MUST BE NO MORE THAN WHAT THE LOCAL GOVERNMENT UNIT WOULD INCUR IN ACCOMODATING THE NEW USERS OF THE SYSTEM:

Somewhat more difficult, but easily met nevertheless, is the second part. The issue simply is whether the cost of meeting the increased demand can be measured in terms of dollars and whether the "fee" is less than the costs. Unquestionably this is complicated, but the criteria for validity is not mathematical precision but reasonableness. See *Lainhart v. Catts, supra*; *Bitter v. City of Lincoln, supra*. If the county were a private business (to use a *Dunedin* analogy) undoubtedly the analysis used here, or a similar one, would be useful in estimating future needs, and no private business would accept the argument that because a measurement is difficult it should not be made or relied upon. Thus, the second part of the test is met.

## III.

## THE FEES MUST BE EXPRESSLY EARMARKED AND SPENT FOR THE PURPOSES FOR WHICH THEY WERE CHARGED:

Undoubtedly the third part is the most difficult to meet and will probably prove to be the most contested in future cases testing the validity of this form of public finance. Failure to meet this test has been the primary reason why similar ordinances have been invalidated. For example:

"The fee here is simply an extraction of money to be put in trust for roads. . . . There are no other requirements. There

are *no specifics* provided in the ordinance *as to where and when these monies are to be expended for roads. . . ." Janis*, supra at 375 (emphasis added).

"5. The court finds . . . that the ordinance is vague and ambiguous in that there are *no specifics* provided for in the ordinance *as to where and when the monies collected. . .*are to be expended. . . . There is no requirement in the ordinance *restricting the use* of the money to services to be provided *to those areas and persons from whom the money is exacted." Village of Royal Palm Beach*, supra. (emphasis added).

"[Imposition of an impact fee] is permissible where expansion is reasonably required, if use of the money collected is limited to meeting the costs of expansion.

If the ordinance in the present case had so restricted the use of the fees which it required to be collected, there would be little question as to its validity." *Dunedin*, supra at 320-321 (emphasis added).

This Fair Share Ordinance divides the county into 40 zones and specifies that when fees are paid they are to be deposited into a separate trust fund established for the zone from which the fees have been collected. Monies withdrawn from these trust funds may be spent only for construction or improvement of the roads on the county's major road network system, that is, all arterial and collector roads in Palm Beach County and must be spent exclusively within the zone from which the fees are collected.

That these funds are specifically earmarked cannot be seriously questioned, even though the method used by the county may not be perfect. Perfection is not required for validity. Plaintiffs contend, however, that roads, being open to the public generally, are not properly subject to the sort of analysis that attempts to determine whether a payor receives an appropriate benefit in return for the "fee" he pays. This argument deserves careful consideration, but must ultimately be rejected.

Defendant maintains that payors of these "fees" receive special benefits sufficient to justify collection. Plaintiffs deny this, claiming that the public generally, or at least the non-payors within the zones, benefit equally from road construction because roads are open to everyone. Although neither party has contended that this "fee" is a special assessment rather than a fee, the two methods of public financing are similar, and special assessment cases as well as eminent domain cases, are analogous.

Actually, in many respects this "fee" looks more like a special assessment (which is a form of taxation) than a fee because benefits received by payors appear to be more in the nature of a "special advantage" which is terminology used in special assessment cases, rather than a direct receipt of services, but plaintiffs do not contend that this "fee" is a special assessment and no case evaluating similar "fees" has suggested that the "fees" are in reality special assessments or special taxes. See, for example, *Jordan v. Village of Menomonee Falls*, supra; *Associated Homebuilders of the Greater Easy Bay, Inc. v. City of Walnut Grove*, 484 P.2d 606 (Calif. 1971); *Homebuilders Association of Greater Kansas City v. City of Kansas*, supra; *Call v. City of West Jordan*, supra. See, also, cases discussed in *City of Dunedin v. Contractors & Builders Association of Pinellas County*, 312 So.2d 763, (2nd DCA 1975).

*Jordan v. Village of Menomonee Falls* e.g., involved an ordinance conditioning subdivision approval on dedication of land or payment of a "fee" for schools, parks and recreation sites. The contention there was that the ordinance constitute a tax because the dedication or "fee" would be applied to facilities that were not specifically and uniquely attributable to the subdivison. The court rejected this argument and observed as follows:

> *"In most instances it would be impossible for the municipality to prove that the land required to be dedicated for a park or school site was to meet a need solely attributable to the anticipated influx of people in the community to occupy this particular subdivision.* On the other hand, the municipality might well be able to establish that a group of subdivisions approved over a period of several years had been responsible for bringing into the community a considerable number of people making it necessary that the land dedications required of the subdividers be utilized for school, park and recreational purposes for the benefit of such influx. In the absence of contravening evidence *this would establish a reasonable basis for finding that the need for the acquisition was occasioned by the activity of the subdivider."* [at 447] (emphasis added).

*Call v. City of West Jordan* likewise addressed itself to this problem:

> "We agree that the dedication should have some reasonable relationship to the needs created by the subdivision. . . . But it is so plain as to hardly require expression that if the purpose of the ordinance is properly carried out, it will redound to the benefit of the subdivision as well as to the general welfare of the whole community. *The fact that it does so, rather than solely*

*benefiting the individual subdivision, does not impair the validity
of the ordinance.* [at 220] (emphasis added).

*Dunedin* itself does not even suggest that the "fee" in that case was a
special assessment even though the "fees" were not used for specific
services but for *capital improvements* which, of course, inured to the
benefit of the community generally, as do roads, parks, public buildings
and the like. But the reasoning used by *Dunedin* to uphold the "fee" is
identical to the reasoning used in cases upholding the validity of special
assessments. The holding in *Dunedin* would have been the same even if
sewerage services were furnished to residents not only as a direct service
to *them* but, also, to the *community* as a public health requirement.
See, *City of St. Petersburg v. Briley, Wild & Associates, Inc.*, 239 So.2d
817, (Fla. 1970). The payors in *Dunedin* would have been required to
pay, and would have received a special benefit from the capital
improvements, even if they had no real immediate use for the connections.
See, *City of Hallandale v. Meekins*, 237 So.2d 318 (4th ADCA 1970),
Cert. discharged, 245 So.2d 253 (Fla. 1971). (Dogtrack property that
forseeably could be developed as condominium held to benefit from
nearby sewerage system.).

Thus, because the payor of a "fee" such as this has been shown to
have received a proportional special benefit, the third part of the
*Dunedin* test is met.

Furthermore, even though this "fee" might be fairly described as a
special assessment, it can *also* be fairly described as a fee. The question
is not whether one is more accurate than the other but whether plaintiffs
have presented sufficient evidence to overcome the presumption of
correctness. See *Atlantic Coastline R.R. Company v. City of Lakeland*,
115 So.2d 669 (Fla. 1928); *Lainhart v. Catts, supra.*

Also, unlike most special assessments which are assessed against all
property owners within a geographical area, this "fee" is assessed only
against *new* developers. This is a reasonable classification because only
the new developers have created the necessity for new road construction.
This reasonableness lends support to defendants' contention that payors
have received a special benefit over and above that enjoyed by existing
property owners. Without the newly created demand, old users would
have no need for the new construction. See *Call v. City of Jordan,
supra.*

The question here, then, is not whether this "fee" is in fact a fee or a
special assessment, but whether this "fee" meets the *Dunedin* test, that
is, whether persons who pay this "fee" receive sufficient benefits to
justify its exaction. The evidence establishes that they do. See *Dunedin,
supra*; cf., *City of Tallahassee v. Baker*, 153 So.2d 875, (Fla. 1951) (an

eminent domain case holding that road improvements decreased property values and thus justified compensation); *Bodner v. City of Coral Gables*, 245 So.2d 250 (Fla. 1971) (when real property abuts, or falls *within the protective proximity* of the improvement, a presumption arises from the nature and purpose of the improvement that the property benefits.) (emphasis added); see also *City of Hallandale v. Meekins, supra*.

For these and other reasons which have been exceptionally well argued to the court by counsel on both sides, the court finds the following:

1.   The court has jurisdiction of this cause and the parties.

2.   Plaintiffs failed to rebut by a preponderance of the evidence the presumption of validity of Palm Beach County Ordinance #79-7, as amended by Ordinance #81-4.

3.   Palm Beach County has authority under Section 125.01 (1)(m), and, under Section 163.3161 et seq., Florida Statutes and supporting cases, to enact Palm Beach County Ordinance #79-7 as amended by Ordinance #81-4.

4.   The fair share fee requirements contained in Palm Beach County Ordinance #79-7 as amended by Ordinance #81-4 constitutes a valid fee and not a tax.

5.   Plaintiffs failed to prove by a preponderance of the evidence that the ordinance is unlawfully vague, arbitrary, unreasonable or discriminatory.

6.   Plaintiffs failed to prove by a preponderance of the evidence that the ordinance violates the due process and the equal protection provisions of the Florida or United States Constitution.

7.   Plaintiffs failed to prove by a preponderance of the evidence that the fair share fee requirements of the ordinance constitute double taxation under Florida law.

8.   Plaintiffs failed to prove by a preponderance of the evidence that the fair share fee requirements of the ordinance violates Section 125.56(2), Florida Statutes.

It is thereupon ORDERED AND ADJUDGED as follows:

(A) Plaintiffs, HOMEBUILDERS AND CONTRACTORS ASSOCIATION OF PALM BEACH COUNTY, INC., and TED SATTER ENTERPRISES, INC., in their individual and representative capacities, take nothing by their complaint as amended and shall go hence without day.

(B) Defendants may within 30 days hereafter file a motion to tax costs as they may be advised.